(October 5, 1918.)

MELISSA H. RIORDAN, Respondent, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a Corporation, Appellant.

[175 Pac. 586.]

INSURANCE—EVIDENCE—WAIVER.

1. The issuance of a policy of insurance differing in terms and rate of premium from the one applied for constitutes a rejection of the application and a counter offer by the company requiring acceptance before a valid contract is made.

2. *Held,* that there was substantial evidence to support the finding of the jury that the policy was accepted by the applicant.

3. Where at the time of making application for a policy of insurance a sufficient amount is paid to the company to cover the first premium and a policy is issued not as applied for but on a different plan and at a higher rate of premium, which policy acknowledges receipt of the first premium as of the date when paid and is offered to and accepted by the applicant, the company waives an agreement

in the application that the policy shall not take effect until the first premium has been paid during the good health of the applicant.

[As to waiver of conditions in insurance policy by insurer's failure to inquire into existing facts, see note in Ann. Cas. 1917B, 500.]

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles P. McCarthy, Judge.

Action to recover on insurance policy. Judgment for plaintiff. *Affirmed.*

Richards & Haga and McKeen F. Morrow, for Appellant.

An application for insurance is not itself a contract, but is a mere proposal which requires acceptance to make it available as a contract, and such acceptance must be a complete and precise adoption of the application, or there is no contract. (*Dorman v. Connecticut Fire Ins. Co.*, 41 Okl. 509, 139 Pac. 262, 51 L. R. A., N. S., 873; *McFarlane v. Wadhams*, 165 Fed. 987; *Kennedy v. Mutual Ben. Life Ins. Co.*, 205 Fed. 677; *People's Ins. Co. v. Paddon*, 8 Ill. App. 447.)

Where an insurance company issues a policy which does not entirely and adequately correspond to the application, or imposes any additional conditions upon the applicant, the transaction amounts to a rejection of the original proposition and the making of a counter offer or proposal which cannot become a contract until submitted to the applicant and accepted by him in accordance with the terms of the counter offer as a substitute for the contract he sought to enter into. (*New York Life Ins. Co. v. Levy*, 122 Ky. 457, 92 S. W. 325, 5 L. R. A., N. S., 739, and note; *Mohrstadt v. Mutual Life Ins. Co.*, 115 Fed. 81, 52 C. C. A. 675; *Mutual Life Ins. Co. v. Young*, 90 U. S. 85, 23 L. ed. 152; *Travis v. Nederland Life Ins. Co.*, 104 Fed. 486, 43 C. C. A. 653; *Myers v. Keystone etc. Ins. Co.*, 27 Pa. 268, 67 Am. Dec. 462; *Stephens v. Capital Ins. Co.*, 87 Iowa, 283, 54 N. W. 139; *Aetna Life Ins. Co. v. Hocker*, 39 Tex. Civ. 330, 89 S. W. 26; *Wood v. Brotherhood, etc.*, 148 Iowa, 400, 126 N. W. 949; *Michigan Pipe Co. v. Michigan F. & M. Co.*, 92 Mich. 482, 52 N. W. 1070, 20 L. R. A.

277; *Rushing v. Manhattan Life Ins. Co.*, 224 Fed. 74, 139 C. C. A. 520.)

The instructions to appellant's agent not to deliver this policy except during applicant's good health were not only limitations on the scope and extent of his agency which respondent was bound to know, but were conditions of the offer, and a binding contract could not be made on any other conditions. (*Schwartz v. Germania Ins. Co.*, 18 Gil. 404, 18 Minn. 448, 21 Minn. 215; *McNicol v. New York Life Ins. Co.*, 149 Fed. 141, 79 C. C. A. 11; *Drago v. Prudential Ins. Co.*, 184 Ill. App. 618; *John Hancock Mut. Life Ins. Co. v. McClure*, 218 Fed. 597, 134 C. C. A. 355; *Hoyt v. Mutual Ben. Life Ins. Co.*, 98 Mass. 539; *Markey v. Mutual Benefit Life Co.*, 103 Mass. 78, 118 Mass. 178, 126 Mass. 158.)

Persons dealing with an agent are bound to ascertain both the fact of the agency and the nature and extent of his authority, and limitations on such authority cannot be rendered ineffective by the agent's silence concerning them, or the other party's failure to inquire. (1 Mechem, Agency, secs. 743, 750; *Mitrovich v. Fresno Fruit Packing Co.*, 123 Cal. 379, 55 Pac. 1064.)

Where an insurance policy is placed in the hands of an agent for delivery upon the performance of certain conditions, such as payment of the premium, the continuance of the life or health of the insured, or the countersigning of the policy, the contract cannot take effect until the condition is performed. (25 Cyc. 718; *Neff v. Metropolitan Life Ins. Co.*, 39 Ind. App. 250, 73 N. E. 1041; *Bowen v. Prudential Ins. Co.*, 178 Mich. 63, 144 N. W. 543, 51 L. R. A., N. S., 587; *Michigan Mut. Life Ins. Co. v. Thompson*, 44 Ind. App. 180, 86 N. E. 503, 505; *Thompson v. Michigan Mut. Life Ins. Co.*, 56 Ind. App. 502, 105 N. E. 780; *Badger v. American etc. Ins. Co.*, 103 Mass. 244, 4 Am. Rep. 547; *John Hancock Mut. Life Ins. Co. v. McClure*, 218 Fed. 597, 134 C. C. A. 355.)

A change in the condition of an applicant's health prior to the final consummation of the contract avoids the contract in the absence of a waiver after a full disclosure of the facts. (*John Hancock Mut. Life Ins. Co. v. McClure, supra; Pied-*

*mont etc. Life Ins. Co. v. Ewing,* 92 U. S. 377, 23 L. ed. 610; *Equitable Life Assur. Soc. v. McElroy,* 83 Fed. 631, 28 C. C. A. 365; *Cable v. United States Life Ins. Co.,* 111 Fed. 19, 49 C. C. A. 216; *McLanahan v. Universal Ins. Co.,* 1 Pet. (26 U. S.) 170, 7 L. ed. 98; *British etc. Ins. Co. v. Great Western Co.,* 38 L. J. Ch., N. S., 314; *Traill v. Baring,* 33 L. J. Ch. 521.)

An attempt to accept an offer in any other manner than that indicated by the offer is ineffectual. (1 Elliott, Contracts, sec. 29; *Eliason v. Henshaw,* 4 Wheat. (17 U. S.) 225, 4 L. ed. 556.)

At the time of the alleged acceptance of the policy in behalf of Riordan his condition had changed materially, and inasmuch as he was then on his deathbed, no contract of insurance could be consummated without a full and frank disclosure of his actual condition. (*Rathbun v. New York Life Ins. Co.,* 30 Ida. 34, 165 Pac. 997.)

The special finding of the jury that Riordan was in insurable health on July 23d was against law. (*Rathbun v. New York Life Ins. Co., supra; Rasicot v. Royal Neighbors,* 18 Ida. 85, 138 Am. St. 180, 108 Pac. 1048, 29 L. R. A., N. S., 433; *Sovereign Camp v. Jackson* (Okl.), 157 Pac. 92, L. R. A. 1916F, 166; note to *Roe v. National Life Ins. Assn.,* 17 L. R. A., N. S., 1145; note to *Connecticut Gen. Life Ins. Co. v. Mullen,* 43 L. R. A., N. S., 726.)

Charles M. Kahn, for Respondent.

The acceptance of a policy requires no particular formality and depends to a great extent upon the facts and circumstances of the individual case. (May on Insurance, sec. 53; *Eames v. Home Ins. Co.,* 94 U. S. 621, 24 L. ed. 298.)

The general effect of an acceptance of the policy tendered is to complete the contract and to render it binding on the parties. (1 Cooley's Ins. Briefs, p. 458; Joyce on Ins., sec. 55.)

"After an unqualified acceptance of a policy there is a binding contract and both the insured and the company are bound by the terms of the policy, in the absence of fraud or

mistake, even though the policy varies from the application."
(25 Cyc. 723.)

After this acceptance, an actual, manual, physical delivery
of the policy was not necessary. (1 Cooley's Ins. Briefs,
p. 446; *Dargan v. Equitable Life Assur. Society,* 71 S. C.
356, 51 S. E. 125.)

"In the absence of a condition that delivery can be made
only while in good health, mere private instructions, not
known to the applicant, that the agent shall not deliver pol-
icies unless the insured is in good health, do not affect the
insured's right to the policy." (1 Cooley's Ins. Briefs,
p. 451; Bacon on Insurance, sec. 153; Clement on Ins., p. 452;
Elliott on Contracts, sec. 4164.)

"The powers of the agent are *prima facie* coextensive with
the business intrusted to his care, and will not be narrowed
by limitations not communicated to the person with whom he
deals." (*Union Mut. Life Ins. Co. v. Wilkinson,* 80 U. S.
222, 223, 20 L. ed. 617, 623; *Hall v. Union Central Life
Ins. Co.,* 23 Wash. 610, 83 Am. St. 844, 63 Pac. 505, 51
L. R. A. 288; *Relief Fire Ins. Co. v. Shaw,* 94 U. S. 574,
577, 24 L. ed. 291, 293; *Taylor v. Aetna Life Ins. Co.,* 13
Gray (Mass.), 434; *Fried v. Royal Ins. Co.,* 50 N. Y. 243,
247; *La Grone v. Timmerman,* 46 S. C. 372, 24 S. E. 290,
299; *Mississippi Valley Life Ins. Co. v. Neyland,* 9 Bush
(72 Ky.), 430, 437; *Going v. Mutual Benefit Life Ins.
Co.,* 58 S. C. 201, 36 S. E. 556; *New York Life Ins. Co. v.
Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837, 29 L. ed. 934; *Kimbro
v. New York Life Ins. Co.,* 134 Iowa, 84, 108 N. W. 1025, 12
L. R. A., N. S., 421; *Bruner v. Brotherhood of American Yeo-
men,* 136 Iowa, 612, 111 N. W. 977; *Carter v. Bankers'
Life Ins. Co.,* 83 Neb. 810, 120 N. W. 455; *Currie v. Contin-
ental Casualty Co.,* 147 Iowa, 281, 140 Am. St. 300, 126 N. W.
164, 165.)

The appellate court will not disturb a verdict of the jury
on conflicting evidence. (*Jensen v. Bumgarner,* 28 Ida. 706,
156 Pac. 114.)

RICE, J.—On May 19, 1914, John E. Riordan made appli-
cation to the Equitable Life Assurance Society of the United

States, through C. F. Kutnewsky, the society's agency manager for Idaho, for a policy of insurance on his life in the amount of $2,000 on the ordinary life plan, the annual premium for which was fixed at $87.08. The application contained the following provision:

"I hereby agree that the policy issued hereon shall not take effect until the first premium has been paid during my good health."

At the same time he paid the agent in cash $261.24 for the first three annual premiums, and received the following receipt therefor:

"Received of John E. Riordan Two Hundred Sixty-one and 24/100 Dollars, the first three annual premiums on proposed insurance for $2000.00 on the life of himself for which the above mentioned application is this day made to the Equitable Life Assurance Society of the United States. Insurance subject to the terms and conditions of the policy contract shall take effect as of the date of this receipt, provided the applicant is on this date in the opinion of the Society's authorized officers in New York, an insurable risk under its rules and the application is otherwise acceptable on the plan and for the amount applied for; otherwise, the payment evidenced by this receipt shall be returned on demand and the surrender of this receipt.

"Dated at Boise, Idaho, May 19, 1914.

"[Sgd.]    C. F. KUTNEWSKY, Agent.

"This receipt must not be detached unless first premium is collected."

The application was forwarded to the home office in New York, where the following notation was made thereon: "Policy issued not as applied for, but on the 20 year End. plan only at age 51." The policy was thereupon issued by the society at its home office, dated July 13, 1914, but its register date was May 19, 1914. The policy was forwarded to Boise and received by the local agent on July 18th.

As executed the policy was on the twenty-year endowment plan, rated up to the age of fifty-one, and required an annual premium of $127.82. It contained the following provision:

"This insurance is granted in consideration of the payment in advance of $127.82, and of the payment annually thereafter of a like sum upon each 19th day of May until twenty full years' premiums shall have been paid, or until prior death of the insured."

Upon receipt of the policy the agent had a conversation with the applicant, in which he told him that he had a policy for him, but that it was not issued as applied for and requested him to come to his office and look it over. On the following day, Sunday, July 19th, Riordan was taken sick. On Monday or Tuesday following the agent became cognizant of that fact. On Wednesday, Riordan was taken to the hospital. On Thursday, Melissa H. Riordan, wife of the applicant, beneficiary named in the application and the policy, and the respondent herein, at the request of her husband, went to the agent's office with reference to the policy.

There is a conflict in the testimony as to what took place at this interview. Respondent testified that, acting upon her husband's instructions, she told the agent of appellant that she had come to his office for the policy; that the agent told her there was nothing additional to sign; that he computed the additional amount necessary to pay the three annual premiums in advance at the increased rate, and told her he would deliver the policy if she would bring him such additional amount. She further testified that she then went to secure her husband's check, intending to return with the check and secure the policy, and that upon returning to her husband he told her to pay the additional sum. It is admitted that during the interview she informed the agent that her husband was in the hospital. The payment of an additional sum, however, was optional with the applicant. It cannot be held, therefore, that the payment of this amount was a condition to the delivery of the policy. Mr. Kutnewsky testified in effect that she came to his office seeking information with regard to the changes made in the policy as issued from that applied for, and that he gave her the desired information, but that she did not demand or offer to accept the policy. A short time after this interview the agent called up respondent

by telephone and told her he could not deliver the policy. He testified that in the meantime he had examined the company's rules and concluded that according to the instructions therein contained he could not deliver the policy. Riordan died the Saturday or Sunday following.

Respondent brought this action to recover the face of the policy, and another cause of action to recover the return of the difference between the amount paid by Riordan and the first year's premium. The jury returned a verdict in favor of respondent for both causes of action in the amount of $2,274.50.

Respondent alleged the making of the application and the payment of $261.24; that the said application was accepted as a risk by appellant; that appellant issued its policy of insurance, whereby it insured the life of John E. Riordan in the sum of $2,000; that said policy of insurance was forwarded to the office of appellant in Boise to be delivered to the said Riordan; that the policy was received by the agent of appellant in Boise when Riordan was alive and in good health, and that respondent, acting for Riordan, demanded possession of the policy of insurance, but the agent refused to deliver the same.

Appellant demurred to the complaint on the ground of uncertainty, in that it did not appear that the policy issued and alleged to have been executed by appellant was the kind or form of policy applied for. The demurrer was overruled, and appellant thereupon answered, denying that it issued a policy in accordance with the application of Riordan, but admitting that it did issue its policy, not as applied for, but on a different plan and at a higher rate of premium, and alleged that the said policy was forwarded to the office of appellant at Boise to be submitted to the said Riordan for his acceptance or refusal, but that the applicant never accepted or refused the same.

The uncertainty of the complaint, if any existed, was cured by the answer. (31 Cyc. 714 et seq.) Nor was there any fatal variance between the proof offered and the allegations of

the complaint in view of the answer filed. Rev. Codes, sec. 4225, is as follows:

"No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that the party has been so misled, the court may order the pleading to be amended, upon such terms as may be just."

The answer filed by appellant discloses that it was neither surprised nor prejudiced by any variance between the pleadings and proof.

The principal question involved in this case is whether a contract of insurance was consummated.

The issuance of a policy differing in terms and rate of premium from the one applied for constituted a rejection of the application made by Riordan, and a counter offer to him requiring acceptance before a valid contract was made. (*Mutual Life Ins. Co. v. Young,* 90 U. S. 85, 23 L. ed. 152; *State v. Robertson* (Mo.), 191 S. W. 989; *Mohrstadt v. Mutual Life Ins. Co.,* 115 Fed. 81, 52 C. C. A. 675.)

At the close of the testimony appellant moved for a directed verdict on the ground that respondent had not proven that a contract of insurance existed between the parties, and also for the reason that respondent had failed to prove that the proposal of the insurance company to insure the deceased was accepted by him before such proposal or offer was rejected and withdrawn. The motion was overruled by the court. Appellant thereupon requested that special interrogatories be submitted to the jury, the first of which was as follows:

"If the deceased, John E. Riordan, accepted the proposal of insurance made by the defendant in the contract or policy of insurance, which it sent to its agent at Boise, when was such acceptance made by the deceased?"

In answering this interrogatory the jury found that such acceptance was made July 23, 1914.

After a careful examination of the record in the case, we cannot say there is no substantial evidence to sustain this

special finding by the jury. The action of the court in over-ruling the motion for a directed verdict on this ground was therefore proper, and we must consider the issue as to the acceptance of the policy by deceased as settled by the action of the jury.

Where the contract of insurance is complete, manual delivery of the policy is not essential to its becoming a binding contract. Our attention has not been directed to any provision of the application or policy requiring actual delivery as a condition precedent to the taking effect thereof.

In this connection, the following rule of appellant company was introduced in evidence:

"When policies are not to be delivered: A policy is not to be delivered to an applicant who does not hold a conditional receipt given at the time the application was secured, unless the applicant is in as good health at the time of delivery (so far as the agent can possibly determine) as when the examination was made. But a policy issued otherwise than as applied for is not to be delivered in any case, except during the good health of the insured, even though a conditional receipt has been issued. . . . . . "

It is contended that this rule was a limitation upon the power of the agent so that any delivery, actual or constructive, by him in violation thereof, was invalid. It is admitted that this rule of the company was never brought to the attention of the deceased. The policy was sent to the agent to be by him offered to the insured. Such a rule as the foregoing, not having been brought to the attention of the applicant, is not binding upon him. (See *Fried v. Royal Ins. Co.*, 50 N. Y. 243.) It is not a limitation upon the agent's authority, since it vests him with discretion to determine whether or not the applicant is in good health.

Having accepted the policy in question, it remains to be determined whether the same failed to become effective as a binding contract by reason of the agreement of the applicant that the policy should not take effect until the first premium had been paid during his good health.

Under our statute, the application and the policy constitute the contract of insurance. (1913 Sess. Laws, chap. 97, p. 407.)

There is attached to the policy as issued a photographic copy of the application of May 19th. The application cannot be ignored, but, on the contrary, became a part of the contract which was accepted by the deceased.

Another special interrogatory submitted to the jury was as follows:

"If you find that the deceased accepted such proposal of insurance, was he in insurable health at the time of such acceptance?"

This interrogatory the jury answered in the affirmative. It must be conceded that the evidence as to the state of the health of the deceased on July 23, 1914, the date the jury found the policy was accepted, is very meager. Respondent testified that when the deceased was taken sick the physician told her he had lumbago. There is no evidence as to the nature of the disease which finally caused the death of Riordan. There is no evidence as to the state of his health on July 23d, except that he was in the hospital, and may have been somewhat worse than he was on the first day of his sickness. Respondent also testified that she did not consider his condition serious until Friday, July 24th.

We do not consider it necessary to decide whether there was substantial evidence to support this finding of the jury. At the time of the acceptance of the policy the company had in its possession $261.24 paid to it by the deceased. It does not appear that any reference was made to the money already paid by the deceased, either by appellant's agent or respondent, in the interview at which the policy was accepted. The policy itself contained an acknowledgment of the receipt of the first premium, and there can be no conclusion other than that a portion of the money paid on May 19th, while deceased was in good health, was to be considered as payment of the first premium in cash upon the acceptance of the policy. By accepting the policy the deceased acquiesced in the application of the necessary amount of the money to the payment of the

first premium. The agreement in the application that the policy issued was not to take effect until the first premium was paid by the applicant during his good health was a provision for the benefit of appellant, and could be waived by it.

Under all the circumstances disclosed by the record in this case as outlined above, the appellant must be held to have waived the requirement that the first premium be paid while the insured was in good health.

We see no sufficient reason for disturbing the verdict of the jury. Judgment affirmed. Costs awarded to respondent.

Budge, C. J., and Morgan, J., concur.