FARMERS MUTUAL HAIL INSURANCE ASSOCIATION, APPELLEE
AND CROSS-APPELLANT, V. EUGENE J. HAINER,
APPELLANT AND CROSS-APPELLEE.

FILED FEBRUARY 28, 1929.   No. 26181.

*Hainer, Flansburg & Lee,* for appellant.

*Clark Jeary* and *Clarence G. Miles, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and
EBERLY, JJ., and REDICK, District Judge.

EBERLY, J.

This is an action at law by the Farmers Mutual Hail
Insurance Association of Iowa, hereinafter designated as
the plaintiff, against Eugene J. Hainer, the defendant,

to recover premium assessments on two policies of hail insurance. The plaintiff is a mutual assessment company and its two causes of action are for assessments on policies No. 9600 and No. 9601, which plaintiff alleges it "executed and delivered" to the defendant. The amount of the claim in the first cause of action is $1,462.23 on one policy, and on the second cause of action the amount claimed ·is $650.19 on the other policy.

The defense tendered by the defendant was (1) a general denial; and also (2) that, as to each of the causes of action declared on by the plaintiff, the defendant denies that he ever made or entered into any contract of insurance with the plaintiff, and especially denies that he ever made or entered into any contract of insurance declared upon by said plaintiff in its petition.

Trial to jury: Verdict for plaintiff on the first cause of action, and for defendant on the second cause of action. Judgment upon verdict. By appeal and cross-appeal each of these parties now seeks a reversal of this action of the trial court.

It is quite apparent that the controlling question in both controversies now before us is: "Was a valid contract of insurance actually entered into between the parties?" So far as origin is concerned, the facts as to both causes of action are essentially identical.

The undisputed evidence is that, at the time the preliminary negotiations in question were had between the parties, defendant was the owner of an interest in 2,192 acres of growing corn in Nebraska. He desired to insure his interest in this corn against hail at $10 an acre. He wanted a five-year insurance contract covering his interest in such corn as might be grown on these lands during the four succeeding years at $10 an acre. He also, prior to this time, had transferred titles of certain Nebraska land to certain relatives. He desired in a similar manner to secure insurance on the shares of such relatives in the growing crop to the extent of 249 acres situated on the lands by him conveyed to them and to the extent of

$10 an acre. On the subject of the nature, amount, and extent of the insurance actually applied for by the defendant, the following evidence was adduced by the plaintiff as part of its case in chief; the plaintiff's agent who actually transacted the business for plaintiff with the defendant testifying as follows: "Q. State whether or not he (E. J. Hainer) told you as to the amount of insurance that he wanted on each acre? A. He did. Q. And what did he say? A. He said that he wanted $10 an acre on his undivided interest in each acre. * * * I said all right." On cross-examination: "Q. And there is not anything in those applications anywhere to show how much land was actually cultivated and sown to corn for that year (1925)? A. There is not in any of our applications. No, sir. Q. Therefore there is not anything in this application that shows how many acres of corn were actually to be insured, is there, Mr. Arnold? A. Not in the application. Q. Neither do these applications set forth the interest or amount of interest that Judge Hainer had in the acres of corn that were actually sown in corn crop, do they? A. I think not. Q. Now, in this conversation with Judge Hainer, he stated to you that he wished to insure his interest in the acres actually sown in corn crop and at the rate of $10 per acre? A. Yes, sir. Q. And Mr. Hainer told you that the amount of corn that he would have growing on these lands would vary from year to year, did he not? A. I don't know whether he told me, but then I supposed it would. Q. You knew that it would? A. Yes. Q. Now, the way this application is written, application, say exhibit 2, says $12,768. It don't show the number of acres in corn. Now, what would be the insurance provided by this application for a policy issued on it, if the corn crop the following year was only half of what it was the year this application was signed? A. Twice as much per acre as it is now. Q. Your insurance would increase twice as much per acre? A. Yes, sir. Q. Had Mr. Hainer asked that the insurance the second year increase twice as much per acre? A. No."

In summing up, it may be fairly said that the testimony preserved in the bill of exceptions discloses that the oral evidence of both plaintiff and defendant is in substantial accord; that the defendant at the time of submitting his application for insurance actually stipulated for and was entitled to receive hail insurance on his interest in each acre of corn grown on the lands described in 1925, as well as on corn grown on said lands during subsequent years at the rate of $10 an acre for each acre of corn annually grown thereon during the term of five years from date of application. This in effect concedes that the written application in the evidence wholly failed to conform to these undisputed facts. An examination discloses that these instruments appeared in the record as having been drafted upon blanks furnished by plaintiff for that purpose in the handwriting of plaintiff's agent, each of them containing the following provisions:

"I, E. J. Hainer, of 426 Terminal Bldg., Lincoln, postoffice, Lancaster county, Nebraska, hereby make application to the Farmers Mutual Hail Insurance Association of Iowa for membership and indemnity for damage or loss by hail to growing crops enumerated as follows: Corn. For the purpose of obtaining this insurance and securing a basis upon which all adjustments of loss shall be made, it is agreed that the full value of each acre of crop insured under this policy shall be the amount of insurance carried on each acre; such amount to be determined by dividing the amount of insurance represented by the policy by the number of acres of crop covered by such policy. This insurance is for the term of five years from noon of the 6th day of June, 1925, on the following described premises, or on any other premises to which the assured shall remove, if in the same zone, but does not cover in other zones unless transferred in writing, and does not cover any loss occuring after noon on the 20th day of September in any year."

On one of these, however, following the language above quoted are these words: "$14,770.00 on the Qr. Sec. Twp.

of County of Hall, Nebraska. For description of land see exhibit A hereto attached and made a part hereof."

On the other application following the words first quoted appear the following: "$12,768.00 on the Qr. Sec. Twp. of County of Nebraska. For description of land see exhibit B hereto attached and made a part hereof. Also see said exhibit B for ownership of lands and interest in crop insured."

It will be noted, however, as set forth in the evidence to plaintiff's witness heretofore quoted, nowhere in either application, nor in exhibits A and B forming a part thereof as set forth in the bill of exceptions, does any statement of the acreage in corn crop at the time of the application for insurance appear, nor does anything appear therein as to the number of acres of corn actually insured, nor that the insurance upon each acre of growing corn each year during the continuance of the policy should be $10 an acre. The undisputed evidence is that the acreage of actual growing corn in 1925 intended to be insured by these applications was 2,441 acres, and that it was contemplated by both parties that these 2,441 acres should be insured in 1925, and that the acreage of growing corn would thereafter vary from year to year.

It is important on the question of "actual meeting of minds" to apply the quoted words to the subject-matter of these applications for insurance in the manner which the oral evidence establishes, without dispute, was contemplated by the parties who were actually present and drafted them. If we start with the fact that it is orally conceded that the full value of defendant's interest in each acre of crop insured under these policies shall be annually no more and no less than $10 an acre, it follows that, in 1925, 2,756.6 acres were intended to be covered, but the facts are that there were but 2,441 acres of corn in existence to which the insurance could possibly apply, and that is all for which insurance was desired. On the other hand, if we divide the amount of insurance set forth in the application by the actual number of acres of growing crop covered by the

same, we are forced to the conclusion that the amount of insurance on defendant's interest on each acre was, instead of $10 an acre, as actually agreed on, approximately $11.30 an acre. The conclusion also is inevitable that succeeding years would in all probability disclose a still greater variation. And if because of necessary rotation of crops or for other reasons the acreage of corn was reduced 50 per cent., applying the provisions of the printed form, it would follow that instead of $10 an acre, as was undisputedly intended by the parties who actually drew the "applications," the insurance would be approximately $22.60 an acre. The district court, in view of the undisputed evidence introduced without objection, instructed the jury as follows:

"You are instructed that the defendant's application for insurance in this case is not to be limited and determined alone by the wording of the written application signed by him, but also by what terms he verbally requested of the plaintiff's agent, and the defendant had the right, on communicating such request to the company, to refuse to accept any policy from the company which did not conform to such request."

It is deemed that this instruction properly states the law of this case, and the applications now under consideration must be deemed to be each partly oral and partly in writing. It follows that, in order that a contract of insurance be entered into by these parties, it is essential that the plaintiff shall have accepted these applications as embracing both the written and the oral provisions thereof. In this connection it would seem that the "binding receipts" which plaintiff alleges were delivered by its agent to the defendant, in view of the terms expressed therein, cannot of themselves be construed as a recognition or acceptance of the oral provisions of the applications.

This view is strengthened by the undisputed fact that the policies of hail insurance which the plaintiff caused to be signed and forwarded to the defendant in no way recognized or complied with the stipulations orally entered

into, which, together with the written provisions of the applications for insurance, constitute the real proposition submitted to plaintiff by the defendant.

The policies thus forwarded by the plaintiff were by the defendant promptly rejected and returned to the plaintiff with a letter of transmission in which the defendant stated:

"I have received from your agent, Mr. M. J. Arnold, of this city, your policies numbers 9600 and 9601. On examination I conclude these policies are each indefinite and unsatisfactory in the following particulars:

"(1)  There is no statement in the body of either policy giving the amount of insurance provided for and carried.

"(2)  There is no statement in the body of either policy, either general or specific, from which the acreage of corn covered can be determined. * * *

"I suggest the amount of insurance be stated in the body of each policy, and after the word 'corn,' in the body of each policy, there be inserted the words: 'grown on the lands described in the typewritten list, marked exhibit A for identification, attached to this policy and made a part hereof.'

"I called the attention of Mr. Arnold (plaintiff's agent) to these discrepancies, but he refused to do anything therewith and I am obliged to appeal to you for the purpose. As I explained to Mr. Arnold, I do not wish to have any question made on the amount of insurance carried. I understand each policy runs for five years, and the amount of corn may vary with the several years."

The plaintiff again sent the same policies to the defendant before making any of the changes requested in the quoted letter. The defendant refused to accept them and again returned them to the plaintiff with a second letter of transmission which expressly referred to his previous letter from which the above was quoted. It is claimed on behalf of the plaintiff that these policies were again returned to the defendant for a third time, but without making the change suggested, and without causing their terms to express, as the agreement of the parties, that the insurance

on each acre of corn grown each year during the five-year term was to be insured at $10. However, there is no competent evidence sustaining this fact, and the defendant unconditionally denies ever having accepted the policies, and indeed denies having received them after twice returning them to the plaintiff.

It would seem that the refusal of the defendant to accept these policies is amply justified under the facts in this case. The policy tendered failed to conform to the terms of the application when considered as containing both written and oral provisions and no policies were ever tendered that did. Such a tender on part of plaintiff was necessary in order that a valid, binding obligation could be created as against the defendant. Such acceptance of the offer as actually made by defendant, the evidence as to both causes of action affirmatively discloses never was made on behalf of the insurance company.

Where the policy delivered is substantially different from the policy applied for, the person contracting may refuse to take it. The tender of a policy substantially different from that ordered will not, unless accepted by the assured, entitle the insurer to recover premiums for the same. *Jones v. Gilbert,* 93 Ga. 604; *Stephens v. Capital Ins. Co.,* 87 Ia. 283; *Mutual Life Ins. Co. v. Gorman,* 19 Ky. Law Rep. 295; *Blunt v. Fidelity & Casualty Co.,* 145 Cal. 268; *Empire Mutual Annuity & Life Ins. Co. v. Avery,* 3 Ga. App. 97.

It appears that no policy conforming to the actual terms of the application in this case was ever delivered by the plaintiff to and accepted by the defendant.

In order that there may be a valid contract of insurance, there must be a definite understanding and the minds of the parties must meet, as to the company in which the insurance is to be placed, as to the amount of the insurance, as to the duration of the risk, and as to the premium to be paid, which must be agreed upon and actually paid or exist as a legal charge against the party insured. *Kor v. American Eagle Fire Ins. Co.,* 104 Neb. 610; *Cleveland Oil Co.*

v. *Norwich Ins. Society*, 34 Or. 228; *Todd v. German-American Ins. Co.*, 2 Ga. App. 789.

The evidence discloses without question that, save and except the identity of the company in which the insurance was to be placed and the duration of the term thereof, the minds of the parties have never met, so far as the terms above enumerated are concerned. It follows that the allegations of plaintiff's petition on this subject were not sustained by the evidence, and that the plaintiff has therefore wholly failed to sustain his case.

Nor is this conclusion in any manner affected by the settlement of damages occasioned by hail which occurred on July 25, 1925. This settlement was made on the basis of $175. This amount the plaintiff, without direction or authorization of the defendant, credited upon the assessment sued for in the instant case. The record discloses that the settlement was made on the basis of a claim for damages to corn grown on the southwest quarter of section 32, township 11, range 7, owned by Laura H. Hurtz, Hamilton county, Nebraska; that the number of acres damaged were 70 and the total amount of insurance on each acre was $10 and the damages agreed on were 25 per cent. of the full value of each acre.

It is to be noted that, as just stated, the property involved was owned by Laura H. Hurtz, who alone was vested with an insurable interest therein; that the facts as to the ownership of this property were actually communicated to the plaintiff at the time application for insurance thereon was made.

It is true the plaintiff asserts that the defendant agreed to pay the premium for the insurance in question, but there is nothing in the evidence disclosing any claim on his part that he would be entitled to the insurance money in event of loss, save and except as the representative agent, or trustee, of the owner of the property. This settlement or agreement for settlement in behalf of Laura H. Hurtz was made before information had been given defendant that his contention with reference to the actual

terms of his application for insurance had been finally rejected by the plaintiff, and while, so far as the defendant was advised or knew, the negotiations to secure an agreement as to the disputed facts therein were as yet undetermined. Then, too, the terms of the settlement actually made were entirely consistent with defendant's claims as to the real proposition embraced in his application for insurance made to plaintiff, and wholly inconsistent with plaintiff's present contention. As the result of the settlement, neither he nor Laura H. Hurtz received anything of actual value as a result thereof. True, $175, the amount of the loss, as determined by the settlement, was credited upon an apparent claim for premium against the defendant, but which, because of the failure of the insurance company to accept the proposition for insurance as defendant made it, was, in fact, wholly unenforceable and void.

It follows, therefore, that the action of the trial court in entering judgment against the defendant herein for the sum of $1,630.88 upon the first cause of action is reversed and said first cause of action dismissed, and that the action of the district court, its finding and judgment for and in behalf of the defendant upon the second cause of action is in all things approved and confirmed.

JUDGMENT ACCORDINGLY.

Note—See Insurance, 41 L. R. A. n. s. 1135; 14 R. C. L. 901.