Hazel Davis Kronjaeger *v.* The Travelers Insurance Company *et al.*

(No. 9294)

Submitted September 2, 1942. Decided October 13, 1942.

*McCamic & Clarke*, for appellant.
*Nesbitt, Goodwin & Nesbitt,* for appellees.

LOVINS, JUDGE:

This suit was instituted by Hazel Davis Kronjaeger, as beneficiary in a contract of insurance allegedly issued on the life of her deceased husband, Ferdinand H. Kronjaeger, by The Travelers Insurance Company, and not delivered. The bill of complaint prays for discovery as to the policy upon which plaintiff bases her claim and certain documents and memoranda in the possession of the Insurance Company, and also for a decree requiring the defendant company to issue a proper policy and pay the same. After the cause was heard on demurrer to the bill, answers of the defendants, and general replication thereto, and testimony taken on behalf of the plaintiff and defendants, the trial court entered a decree dismissing the bill, and adjudging costs against the plaintiff, from which decree this appeal is prosecuted.

Van M. Altman, one ·of the defendants herein, as Assistant Cashier of the Branch Office of The Travelers Insurance Company at Wheeling, West Virginia, began negotiations in August 1937, with Kronjaeger for issuance of a life insurance policy. On September 7, 1937, Kronjaeger signed an application for a five-year term insurance policy, in the amount of $15,000.00, containing disability and additional indemnity provisions, which application was forwarded to the Home Office of the defendant company at Hartford, Connecticut, upon completion of a medical examination of the applicant. The application in paragraph 18 contains the following provisions:

"I hereby agree for myself and for any person who may have or claim an interest in any contract which may be issued upon this application as follows: * * * B. That every statement herein above contained is true; and that the contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health in so far as I have knowledge or information. C. That my acceptance of any contract issued on this application shall constitute a ratification by me of any corrections, additions or changes made by the Company and noted in the space provided 'For Home Office Indorsement Only.' D. That no agent can make, alter or discharge any contract issued on this application or extend the time for payment of premiums on such contract, nor can such contract be varied or altered or its conditions waived or extended in any respect except by the written agreement of the Company, signed by the President or one of the Vice Presidents or Secretary whose authority will not be delegated."

Attached to the application was a receipt and also a temporary term acceptance receipt. The receipt provided that the insurance applied for would be in force from the date. of the receipt if "said application shall be approved and the insurance accepted as applied for by the Home Office of the Company * * * and the money for which this receipt has been given is sufficient to pay in

full the first premium upon the insurance so accepted". The temporary term acceptance was predicated on the receipt and approval of the application at the Home Office and further expressly provided that without such receipt and approval the Company would incur no liability by reason of the application. The receipts were in blank and were never delivered to Kronjaeger, but were returned to the Home Office where they were detached and destroyed.

The monthly premium for the type of insurance described in the application was $29.85, which amount Kronjaeger paid to Altman September 11, 1937, and he was given an informal receipt instead of the receipt referred to. Kronjaeger was examined by a company physician, and after a further investigation as to Kronjaeger's health was accepted by the Home Office as a proper risk for life insurance. The Home Office, however, did not issue the term policy as applied for, but did issue an ordinary Life policy, the monthly premium for which was $50.85, refusing disability and additional indemnity provisions. This policy, dated September 24, 1937, provided that it should be effective as of September 23, 1937, and was sent to the Branch Office at Wheeling, West Virginia. Upon receipt of the policy so issued, Altman wrote to Kronjaeger apprising him that the policy applied for had not been issued, but that an Ordinary Life policy had been issued, and stating the amount of the premiums and suggesting a discussion. Kronjaeger was a night superintendent for Wheeling Steel Corporation and slept during the day. He was in bed when Altman's letter was delivered, and Mrs. Kronjaeger brought the letter to him and they discussed it, after which Mrs. Kronjaeger had a telephone conversation with Altman, in which she asked the reason for the refusal to issue the policy described in the application. Altman replied that the reasons were confidential. At this point Mrs. Kronjaeger's and Altman's versions of the conversation differ. Mrs. Kronjaeger says that Altman suggested that the policy be accepted and that the $5,000.00 could later be "dropped",

if the premium proved burdensome. She also says that she told Altman they would take the policy and call for it in a day or two, and Altman replied that Kronjaeger could pay the difference in premiums when he came in and not to worry about it. Altman says that he made it clear to Mrs. Kronjaeger that he could not reduce the policy in the Branch office, and that Mrs. Kronjaeger said she could not give a definite answer, but that her husband would come in to discuss it. On the same afternoon Kronjaeger became ill and went to a hospital the following morning. During the afternoon of September 30, 1937, Mrs. Kronjaeger learned that an operation was to be performed on her husband, and went to the Branch Office and talked with Altman. Again their versions differ as to what was said and done on this occasion. Mrs. Kronjaeger states that Altman congratulated them on taking the policy, and that he had a number of papers in his hands, possibly including the policy, whereupon she informed Altman of Kronjaeger's illness and Altman said he would have to wire the Home Office, but there was nothing to worry about. Mrs. Kronjaeger also states that she offered to pay the difference in the premium for the term insurance and the ordinary life insurance, which amounted to $21.00, but that he told her there was nothing to worry about and that the "Travelers" would treat her fairly. Altman testified that Mrs. Kronjaeger said she did not want to be dishonest but wanted him to know about her husband's illness, and inquired whether she could get the policy or part of it; that he told her that he would have to refer the matter to the Home Office immediately and let her know the decision, and that she would be treated fairly in the circumstances. He states he does not remember any offer to pay the difference in the premiums. On the following day an operation was performed on Kronjaeger, and three days thereafter the Home Office of the Insurance Company telegraphed the Branch Office denying the existence of the contract and directing return of the policy and refund of the premium. The day following receipt of this telegram Altman

wrote Mrs. Kronjaeger informing her of its contents and inclosing a check refunding the premium theretofore paid. On October 6, 1937, Kronjaeger died.

After the pleadings had all been filed, the cause was submitted for final decision on the bill, demurrer, answers and replication, counsel for the appellant believing that proof of the allegations of the bill was not required, although all material allegations were denied by the answers, and that appellant was entitled to a decree on the state of the pleadings. The trial court held adversely to this contention, but overruled a motion of appellees for a final decree and permitted appellant to offer her testimony. The appellees now assign as cross-error the refusal of the trial court to enter a final decree for them on the pleadings after the agreed submission thereon.

The bill of complaint herein was, in part, a bill of discovery and "the answers under oath * * * being responsive, full, complete and unequivocal, constitute *prima facie* evidence in favor of the answering party of the facts therein contained." *Woodyard* v. *Sayre*, 90 W. Va. 547, 111 S. E. 313. The answers denied in positive terms the material allegations of the bill of complaint. Such allegations were not sustained by proof and must be taken as waived at the time of the submission on the pleadings. *Bryant* v. *Groves*, 42 W. Va. 10, 24 S. E. 605. We think the trial chancellor should have entered a final decree for the appellees on the pleadings without the taking of testimony. But this error is not prejudicial as the trial chancellor upon testimony taken in behalf of the appellant and appellees found correctly. We too prefer to consider this case in its entirety and to rest our decision on the pleadings, testimony and full hearing accorded the litigants, rather than the narrow ground of error so committed.

The application includes a description of the insurance applied for as follows: (Amount) $15,000, (form) 5 term, Uniform Premium plan with No. 6 disability provision. It is also stated that an additional indemnity provision is desired by applicant. The action of the Home Office

on the application is indicated by its indorsement thereon: "No Disability Provision or Additional Indemnity Provision. * * * Issued on the Ordinary Life form". The issued policy was therefore unlike that applied for except as to the face amount.

Much of the argument on behalf of appellant is based upon the contention that Kronjaeger was entitled to a "binding receipt" upon his payment of the first premium for the policy applied for. This receipt, previously referred to, was attached to the application, as was the "Temporary Term Acceptance". Even if either of the slips had been filled out and given to Kronjaeger, their effect was conditional in the manner stated, and they became binding only upon issuance of the policy as applied for, or one issued in lieu thereof and accepted by applicant. The company reserved the right to accept or reject the proposition contained in the application. "The application being a mere proposal to the company, it can either accept the proposal, decline it altogether or impose such conditions as to the making of the contract, as it may choose". *McCully's Admr.* v. *Phoenix Mutual Life Ins. Co.*, 18 W. Va. 782. See also *Mutual Life Ins. Co.* v. *Young's Admr.*, 23 Wall. 85, 23 L. ed. 152.

In this case the insurance company's reply to the application was the sending of a policy, differing in essential terms from that applied for, to the Wheeling Branch Office. This amounted to a counter-proposition and there was no contract, no meeting of the minds of the parties on the new terms, without acceptance thereof by Kronjaeger. *Fidelity & Casualty Co.* v. *Curtis Brown Co.*, 105 Okla. 136, 232 P. 99; *Field* v. *Missouri State Life Ins. Co.*, 77 Utah 45, 290 P. 979; *Farmers' Mutual Ass'n.* v. *Hainer*, 118 Neb. 116, 223 N. W. 655; *State ex rel. Equitable Life Assurance Society* v. *Robertson*, (Mo.) 191 S. W. 989; *Riordan* v. *Equitable Life Assurance Society*, 31 Idaho 657, 175 P. 586.

The fact that the company retained the amount paid by Kronjaeger as the first premium on the policy applied for does not strengthen appellant's case, in the absence

of acceptance of the counter-proposition. *Cranston* v. *California Ins. Co.,* 94 Ore. 369, 185 P. 292.

Appellant relies strongly upon the case of *Kimbro* v. *New York Life Ins. Co.,* 134 Ia. 84, 108 N. W. 1025, 12 L. R. A. (N. S.) 421, in which recovery was awarded to the beneficiary under facts and circumstances very similar to those of the case at bar. There is one feature, however, by which the cases are readily distinguishable. In the *Kimbro* case, after the home office had sent its agent a policy different from that applied for, the agent wrote applicant that his policy had arrived and that he "was afraid for a little time * * * that it might be that you would be rejected, but am pleased to say that the policy is here". Kimbro had given notes for the first two quarterly premiums and the agent also stated in the letter referred to that he would call "this pay day" and deliver the policy, and asked Kimbro to have the amount of the first note ready at that time. The amount of the premiums on the policy applied for and for the policy issued, was the same. Kimbro died from typhoid fever before receiving the policy or paying the premium note, although his wife offered to pay the same after Kimbro became sick. The Iowa court pointed out in the Kimbro case that the agent was the medium through which negotiations were carried on by the company with the applicant and that he was authorized to complete the contract with Kimbro on the policy issued; further, that the letter from the agent "was the strongest possible assurance that the application had not been rejected, but had been approved, and policy issued accordingly". Also, instead of any suggestion that in order to complete the contract it was necessary for Kimbro to take further action, the agent merely informed him that on the approaching pay day, he would deliver the policy and collect the amount of the first premium note. Contrast the language of Altman's letter to Kronjaeger, upon receipt of the policy from the Home Office: "The Company did not issue the policy on the Five Year Term form we requested and they are not willing to approve for Disability or Addi-

tional Indemnity Provisions. The monthly premium for Ordinary Life Insurance in the amount of $15,000. is $50.85. We would like to discuss this with you * * * Any arrangements that you desire to make concerning discussing this policy are agreeable. Please let me hear from you". Such a contrast makes the factual distinction between the *Kimbro* case and the case at bar so apparent that a further comparison is unnecessary.

The *Kimbro* case is the principal basis for the propositions of appellant that Kronjaeger's application was accepted; that the issuance of a policy different from that applied for did not prevent the policy as issued from going into effect; that, delivery of the policy not being essential, after the death of Kronjaeger, the Insurance Company can not deny existence of the contract; and that, if the policy as issued is construed as a counter-proposition, the record shows that she should recover under principles of estoppel, because of the action of the company in the premises.

We do not believe that the record shows that Mrs. Kronjaeger, on behalf of her husband, accepted the counter-offer. Appellant's argument, in part at least, assumes this important fact to be established by the record.

As hereinbefore stated, the versions of Mrs. Kronjaeger and Altman differ as to the telephone conversation between them on September 28, 1937. Accepting Mrs. Kronjaeger's version as true, it is clear that something remained to be done to make the policy effective. It was incumbent upon the insured actually to pay the balance of the first premium while in good health before the policy took effect. The insured knew of this requirement as it was incorporated in the application signed by him. He also knew that the first premium was $50.85 instead of the amount he had theretofore paid. Altman's letter of September 27, 1937, to Kronjaeger stated the amount of the premium on the policy issued. The balance of the premium was neither paid nor tendered while the insured was in good health. The tender on September 30 was made at a time when the insured was in the hospital suf-

fering from an illness which later resulted in his death. Moreover, it is apparent that Mrs. Kronjaeger did not regard the conversation as constituting a complete and binding acceptance of the policy. This attitude on the part of Mrs. Kronjaeger is shown by the statements made by her two days after the telephone conversation, in which she said, in effect, that she could have taken the policy without revealing the fact that her husband was in the hospital, and that she discussed with Altman the difference in the premiums. This fact tends to show that she did not on September 30, 1937, regard the policy as having been accepted on September 28. We therefore conclude that the conversation by telephone was at most an incomplete negotiation. The divergent testimony with reference to the telephone conversation gave rise to an issue of fact which the trial chancellor resolved in favor of the appellees. The finding so made was not at variance with undisputed testimony, nor was it contrary to the plain preponderance of the whole evidence, and hence will not be disturbed. *Board of County Commissioners* v. *Elm Grove Mining Co.*, 122 W. Va. 442, 9 S. E. 2d 813.

From what has been said relating to the telephone conversation, we conclude that there was no acceptance of the policy issued by the insurer by reason of such conversation, and, if acceptance is found, we must look elsewhere. Did such acceptance occur on September 30, 1937, when appellant visited the Branch Office and conferred with Altman? Although the testimony of appellant and Altman differs somewhat as to what took place on that occasion, both say that it was understood that the Home Office was to be notified immediately of the facts and circumstances. If there had been acceptance of the counter-offer, what was there to notify the Home Office about? We deem Altman's letter of the same day to the Home Office, as being of especial significance, since it embodied practically the same facts as appear in the testimony of appellant and himself, indicating the doubtful status of the insurance policy. The fact that the bal-

ance of the premium was not paid and the fact that the policy was not delivered, further bolster the position of appellee herein, although, admittedly, if acceptance of the counter-offer was shown, neither circumstance would be controlling. The record does not show such acceptance by a preponderance of the evidence, nor is there sufficient doubt as to the same established to warrant us in applying recognized principles which call for favoring the existence of the policy.

Finding no prejudicial error, we affirm the decree of the Circuit Court of Ohio County.

*Affirmed.*