## WARREN v. NEW YORK LIFE INS. CO.
### No. 10081.

Circuit Court of Appeals, Fifth Circuit.

June 3, 1942.

Marion K. Smith, of Shreveport, La., for appellant.

Richard B. Montgomery, Jr., of New Orleans, La., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On June 11, 1940, George Barnes, Jr., of Homer, Louisiana, signed an application to the New York Life Insurance Company for a policy of life insurance in the amount of $2,500 with double indemnity benefits. The applicant named his mother, Madie H. Warren, as beneficiary. On July 27, 1940, the applicant died at Alexandria, Louisiana, as the result of injuries sustained in an automobile accident on July 26, 1940. The Insurance Company refused to pay the claim, and, the policy not having been delivered, the beneficiary brought suit on the application to recover the face amount of the alleged insurance plus double indemnity; and, in the alternative, if it was found that no contract of insurance had been made and entered into, for damages in the amount of the insurance applied for, because of alleged negligence and unreasonable delay of the Company in failing to return the premium paid and in failing to communicate to the applicant the fact that the application made by him on June 11, 1940, had been declined.

The application for insurance provided that "if the applicant, at the time of making this application, pays the soliciting agent in cash the full amount of the first premium * * * and receives * * * a receipt therefor on the form attached * * * and if the Company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount hereby applied for, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not." Barnes paid the sum of $15.18 as the first premium to J. H. Gill, the soliciting agent, and received a receipt incorporating an exact copy of the above provision. The appellant contends that under this provision George Barnes, Jr., was insured from the day he signed the application until the time of his death.

In making his application for insurance Barnes stated, "I have not participated as a passenger or otherwise in aviation or aeronautics." He had flown as a non-paying passenger on May 17, 1940.

On June 12, 1940, Barnes was examined by Dr. E. B. Middleton, medical examiner for the Insurance Company. As a part of his physical examination Barnes answered certain questions contained in Part II of the application and signed the completed form.

"How many aerial flights have you taken and when last? Answer: None.

"How many aerial flights have you taken within the last year? Answer: None.

"State whether as passenger or pilot and whether you are a Reservist. Answer: None.

"Do you contemplate participation in aeronautics? (If so, in what capacity.) Answer: No.

* * * * * *

"On behalf of myself and every person who shall have or claim any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

The examining physician testified that the answers were written "exactly and identically as they were given to me by Mr. Barnes."

The evidence is without dispute that when Barnes left the office of Dr. Middleton, he went immediately to the Municipal Airport in Shreveport and signed for an amateur course in aviation. The purpose of this course was to train and qualify him for a private pilot's license. He agreed to pay $325 for the course. Barnes paid $30 on the account, and that very day flew for thirty minutes. Flying lessons followed on June 14th, 20th, 21st, 22nd, and 25th.

The Insurance Company's office in Shreveport received the application of Barnes and forwarded it to the home office in New York, where a policy was issued and forwarded to the Shreveport office. Upon investigation, and before the policy had been delivered to Barnes, the Company was advised that Barnes was taking flying lessons. It promptly ordered that the policy be returned to the home office for cancellation, and for the premium to be refunded to the applicant. Gill, the agent, did not comply with the order of the Company, but on July 17th, the day after receiving notice of suspension of the application, he went to see Barnes and delivered to him the original notice from the home office as to the suspension of the application. He also delivered a questionnaire to be filled out by the applicant, and a copy of the Company's Permanent Aviation Clause. The questionnaire consisted of a list of questions concerning the applicant's connection with aviation, including his previous flying activities, and his intentions with reference to aviation in the future. The Permanent Aviation Clause which was submitted for the acceptance and signature of the applicant provided for limitation of liability, in the event of issuance of the policy, if the death of the assured "resulted directly or indirectly from operating or riding in any kind of aircraft", except as a fare-paying passenger. The limitation was for the "reserve on the face amount of this policy at the date of death."

The original notice of suspension from the home office, which notice was received by the applicant, was as follows: "Re: Application of George Barnes, Jr. No. 17 639 845-6. Agent J. H. Gill. This application is suspended for the following reasons." Then follows the sentence, "Kindly have aviation blank completed."

Gill testified that he did not tell Barnes that his insurance was not in force, "but I told him when I delivered this aviation blank that it was necessary in order to get the insurance that it would have to be filled out. I thought he would either mail it in the next day or perhaps a couple of days later. He did not do it, and I went up there to Magnolia and he still hadn't filled it out and mailed it, but he told me that he was going to do it." Barnes was killed in an automobile accident about ten days after the papers had been delivered to him, and after the accident all three papers were found in the glove compartment of his car, not completed and not signed. Other facts in detail may be found in the opinion of the District Judge which is reported, Warren v. New York Life Ins. Co., D.C., 37 F.Supp. 358.

■ Certain it is that the policy of insurance was not in force and effect. It had not been delivered. It had been recalled by the home office from the branch office in Shreveport, and the applicant

had been informed and had been given written notice that his application had been suspended pending completion of the aviation questionnaire and approval of the aviation endorsement. The applicant had no policy of insurance. His application stood suspended and he knew it had been suspended, and he also knew the reason for the suspension. Recovery may not be had on the application.

The alternative complaint, seeking recovery for the alleged negligent failure of the insurance company to inform Barnes that his application had been suspended, must also fall. Barnes held up the issuance and delivery of the policy by first making untrue answers to the questions pertaining to his aviation activities. Having discovered that Barnes was in fact then participating in aviation, the Insurance Company promptly suspended his application and, as it had a right to do, called upon him to furnish additional, and truthful, information in this regard. This was a reasonable request, timely made. When Barnes was called upon to complete the additional aviation questionnaire, he promised to do so, but he failed to keep his promise. The questions were never answered. Barnes alone was responsible for the delay, and his failure to receive a policy or to have insurance coverage in the interim was due to his own misstatements coupled with his own subsequent failure and neglect to complete the application. His Beneficiary can not recover for his negligence. Stockton v. Firemen's Ins. Co., 33 La.Ann. 577, 39 Am.Rep. 277; Gonsoulin v. Equitable Life Assurance Society, 152 La. 865, 94 So. 424; Foster v. Morrison, La.App., 145 So. 13; Banker's Life Co. v. Bowie, 10 Cir., 121 F.2d 779.

The judgment is affirmed.