LIFE & CASUALTY INSURANCE COMPANY OF
TENNESSEE *v.* KINNEY.

4-7221 177 S. W. 2d 768

Opinion delivered February 14, 1944.

*Sydney F. Keeble* and *Moore, Burrow, Chowning & Hall,* for appellant.

*Kenneth C. Coffelt,* for appellee.

McFADDIN, J. This appeal necessitates the construction to be placed on some of the provisions in an insurance policy.

Appellee, as beneficiary of Edward Kinney, deceased, sued appellant on a policy of insurance. From a jury verdict for plaintiff there is this appeal; and the sole question here is whether the trial court erred in refusing to direct a verdict for appellant. Briefly, the events leading up to the death of the insured were:

On the public highway in the city of Benton, Arkansas, a large trailer became disconnected from its truck, and the front of the trailer fell to the highway. A hoist line was extended from the front end of the trailer to the back of a tow truck in an effort to have the tow truck, by pulling the hoist line, to raise the front of the trailer. In thus pulling the front end of the *tow truck* would rise from the pavement; and in an effort to afford weight to the front end of the tow truck the deceased, Edward Kinney, stood on the front bumper of the tow truck. He stood erect with his hands on the radiator and facing the driver of the tow truck. Nevertheless the front end of the tow truck went up some ten or twelve feet in the air—even to a forty-five degree angle. The hoist line slipped, or broke, and the front end of the tow truck fell to the pavement, and Edward Kinney's feet slipped from the bumper to the pavement. On striking the pavement the front of the tow truck rebounded in the air, and on this rebound the bumper hit Edward Kinney under the chin and knocked him over backwards on the pavement; and his death was instantaneous.

The policy of insurance here involved contained a coverage for injury or death of the insured worded as follows: "If the insured shall by being struck by actually coming in physical contact with the vehicle itself and not by coming in contact with some object loaded on or attached hereto, or some object struck and propelled against the person by said vehicle, *which is being propelled by* steam, cable, electricity, naphtha, *gasoline,* horse, compressed air or liquid power, *while the insured is walking or standing on a public highway,* or be struck by any vehicle named above *while riding a bicycle on* a public highway, *which term,* public highway, as used in this policy shall mean the traveled and improved portion of the highway." (Italics our own.)

The coverage here concerned was contained in one sentence of several hundred words and we have copied only a part of the sentence, but being the part here relied on by the appellant company.

Before discussing appellant's contentions it might be well to state a few rules that apply on appeal in a case like this one: A. If there was any substantial evidence, viewed in the light most favorable to the appellee, to make a question of fact for the jury, then the motion for directed verdict was properly refused, *Arkansas Power & Light Company* v. *Connelly,* 185 Ark. 693, 49 S. W. 2d 387; *Meyer* v. *Moore,* 195 Ark. 1114, 115 S. W. 2d 1087, and see West's Arkansas Digest, "Appeal and Error," § 997 (3). B. When there is an ambiguity in an insurance contract, that construction of the contract will be adopted which favors the insured; and as between a construction which will defeat a recovery and one which will allow a recovery, the latter will prevail, 32 C. J. 1152; 29 Am. Jur., "Insurance," § 166; West's Arkansas Digest, "Insurance," § 146 (3).

With these familiar rules in mind we proceed to list and discuss the three contentions of appellant as stated in the brief. The first two of these are based on the wording of the policy as previously copied herein.

*Appellant's First Contention: "The Vehicle Which Struck the Insured Was Not a Vehicle Which Was 'Being*

*Propelled' By Gasoline Within the Meaning of That Provision of the Policy."*

In other words appellant contends that when the bumper of the tow car rebounded and inflicted the fatal injury the tow car was not then and there propelled by gasoline, but propelled by the force of the tires striking the pavement. Appellant admits that the tow car was powered by gasoline, but claims that the language in the policy "which is being propelled by . . . gasoline" is a clause designed to mean that the car must have been propelled by gasoline at the instant when it struck the insured; and appellant argues that the tow car was at that time on a rebound from the pavement and not at that moment under the power of the gasoline motor.

This argument of appellant overlooks a fundamental rule of sentence structure which the policy itself recognizes. This rule is that a "which" clause is usually used to describe, modify, or limit the preceding subject, and is not used to indicate the time of the event. A "when" clause or a "while" clause indicates the time of an event. In the quoted section of the policy previously set out herein it will be observed that in referring to the position of the insured as standing, the policy says "while the insured is walking or standing"; and to indicate when the insured might be covered in bicycle riding the policy says "while riding a bicycle." Thus the policy uses a "while" clause to indicate the element of time. But to indicate what was meant by a public highway the policy says "which term, public highway, . . . shall mean." The "which" clause modified or described the previous subject. And likewise, to indicate the type of the vehicle, the policy says "by said vehicle which is being propelled. . . ." So the portion of the policy here involved shows a "which" clause to indicate condition. The policy furnished its own rule of rhetoric as to the construction of a "which" clause and a "while" clause. The clause, "which is being propelled by . . . gasoline," did not mean propelled *at that moment,* but meant a vehicle which was normally propelled by gasoline. In other words it was a "which" clause modifying

the word, vehicle, rather than a "while" clause meaning "at the moment." At least the policy is fairly susceptible of this distinction between a "which" clause and a "while" clause; and, as we have previously pointed out, in case of ambiguity the doubts must be resolved in favor of the insured. So we deny the first contention of the appellant.

*Appellant's Second Contention: "The Insured Was Not 'Walking,' or 'Standing' On a Public Highway Within the Meaning of Those Terms As Used in the Policy Contract."*

It will be recalled that the insured was standing on the bumper of the tow car facing the driver of the tow car and that when the front of the car fell to the pavement the insured's feet slipped to the pavement. The insured was thus facing the front of the tow car, and on the rebound of the tow car the front bumper struck the insured under the chin and knocked him over backwards and his head hit the pavement, and he died instantly. Eye witnesses testified. Said one: "The truck fell and when it hit the ground his feet slipped off of the bumper to the pavement and the truck rebounded and hit him under the chin—the bumper caught him under the chin. After it hit the ground the truck rebounded four or five feet." Said another witness: "The front end of this truck was reared up in a position like that (indicating) and Edward was standing on the front bumper and all at once it dropped and when it hit the pavement his feet slipped off and when the truck rebounded it hit him under the chin."

Now the word "standing" is generally used in contradistinction to "sitting," "kneeling," or "lying." The word indicates a position of the body. If the insured had been sitting, kneeling or lying, he would not have been struck under the chin by the bumper on the rebound of the tow truck and thrown backwards to the pavement. It is admitted that he was on the highway. The witnesses testified that his feet "slipped to the pavement" a moment before the fatal injury. A moment later—but for the injury received—he might have been in some

other position, and doubtless would have been from the force of the fall; but, at the moment when he was hit by the bumper, the jury could have found that he was in a standing position. This clause "while the insured is walking or standing on a public highway" is a "while" clause, and it indicates *time* as we have previously pointed out; and the jury could have found from the testimony of the eye witnesses that at the second of his injury the insured was *standing* on the highway.

This clause "while walking or standing on the highway" has been construed by other courts. In *Smith* v. *Life & Casualty Insurance Company,* 185 Ga. 572, 196 S. E. 59, the insured was running to catch a truck. He ran in front of the truck and tried to catch hold of it and missed in some way and fell under the rear wheel. The Supreme Court of Georgia, in allowing a recovery, said: "While the witnesses did not testify in terms that the insured had his feet on the ground, this may be inferred from a consideration of the entire testimony." In *Life & Casualty* v. *Greenlee,* 187 Miss. 143, 192 So. 340, the insured was killed while mounting a truck, being struck by the bolster of the truck, knocked to the ground and run over; and the Supreme Court of Mississippi held that under these circumstances the insured was standing on the highway. In 130 A. L. R. 1155, there is an annotation on the words "while walking or standing on the highway"; and many cases are collected in that annotation.

We reach the conclusion that in the case at bar the jury might reasonably have found from the testimony of the witnesses that the insured was within the coverage of the policy as regards this clause; so we deny the appellant's second contention.

*Appellant's Third Contention: "The Hazard, or Risk, to Which the Insured Voluntarily and Unnecessarily Subjected Himself (and Which Was the Cause of His Death) By Assuming and Remaining in a Perilous Position On the Truck Bumper Was Manifestly Not a Risk Covered By the Policy or in Contemplation of the Parties When the Contract Was Written."*

Finally, appellant contends that the death of the insured happened under such peculiar circumstances that the parties could not have intended a coverage at the low premium rate charged for this policy. We have no way of knowing from the record in this case what was in the minds of the parties when the contract was written other than what appears in the policy; and we have examined the original policy which is in the transcript. In bold letters on the front of the policy there is this language: "This policy provides benefits for loss of life, limb, or sight by accidental means to travelers or pedestrians, subject to all conditions herein stated." Then on the face of the policy in bold letters are the words "Industrial travel and pedestrian policy." In much finer print, in the body of the policy, are the words which we have copied heretofore. Then, in another place in the policy there is a provision that each clause in the policy "is to be given its full and literal meaning." The "full and literal meaning" of the clauses here involved lead to the possibility of interpretation which we have stated herein concerning appellant's first and second contentions. We cannot make the contract for the parties. We only say that the policy here is susceptible of the "full and literal meaning" claimed by the appellee; and "full and literal meaning" is the yardstick by which the policy states that liability is to be measured.

Finding no error, the judgment of the circuit court is in all things affirmed.

McHANEY and HOLT, JJ., dissent.