Halley *v*. Mutual Benefit Health & Accident Ass'n

4-8941                                    223 S. W. 2d 759

Opinion delivered October 24, 1949.

*Warren E. Wood* and *Griffin Smith, Jr.,* for appellant.

*Malcolm W. Gannaway* and *James B. Gannaway,* for appellee.

Holt, J.  Appellant sought by this action to recover death benefits under the terms of a health and accident quarterly term policy issued by appellee September 3, 1940, to Anna Powell, appellant's wife.  Anna Powell was accidently killed January 5, 1948.  Appellee, insurance company, contended that the policy was not in effect at the time the insured met her death and the trial court, a jury having been waived, sustained appellee's contention.  This appeal followed.

It appears to be undisputed that following the issuance of the policy the first premium paid the insurance to twelve o'clock noon January 1, 1941, and that for the year 1941, and the first half of 1942, each quarterly premium was made on the first day of each quarter.

The quarterly payment of $4.50 due July 1, 1942, was paid September 9, 1942, a receipt countersigned by the company issued to the insured to the effect that the policy was reinstated on that day, September 9, for accidents sustained thereafter until twelve o'clock noon, standard time, December 1, 1942. This September 9th payment was credited by the company to the months of September, October and November, 1942, there being no coverage until September 9th. Next quarterly premium was paid December 16, 1942, and credited to months of December, 1942, January, 1943, and February, 1943. (No coverage between December 1, 1942, and December 16.) Quarterly premium paid March 15, 1943, credited to months of March, April, and May. (No coverage between March 1, 1943, and March 15, 1943.) Appellee thereafter accepted late quarterly premiums on June 21, 1943, June 12, 1945, October 15, 1945, October 10, 1946, and on October 14, 1947. The last quarterly premium was paid by the insured October 14, 1947, which payment was credited by appellee to the remainder of October, all November and December, 1947, there being no coverage between October 1 and October 14.

Appellee reinstated the policy on such dates, but its contention was that coverage was limited to the remainder of the month in which reinstatement occurred and the succeeding two months only, or until the next quarterly premium was due and payable on the first day of the next regular quarter. In other words, appellee contends that this last quarterly premium here was restricted to coverage for the remainder of October in which reinstatement occurred and the succeeding two months only, making another quarterly premium due and payable on the first day of the next regular quarter, January 1, 1948.

Appellant argues that this quarterly premium payment on October 14th required appellee to give to the insured a full three month's coverage, dating from October 14th, which would carry the coverage to January 15, 1948, and beyond the date of insured's death, January 5, 1948.

It appears that a receipt countersigned by appellee was issued to the insured when each quarterly payment was made. All receipts were alike except as to date. The one here involved provided: "Payment of this premium receipted for, if made on or before the date to which premiums have already been paid, keeps your policy in continuous effect, and if made after that date, reinstates the policy on the date of this receipt, as provided in policy, until twelve o'clock noon, Standard time, January 1, 1948, at which time another premium will be due."

The insurance contract involved provides that protection ceases when premiums are unpaid, but that reinstatement may be effected by subsequent payment of premium. The policy provides: "If default be made in the payment of the agreed payment for this policy, the subsequent acceptance of a premium by the Association . . . shall reinstate the policy but only to cover accidental injuries thereafter sustained and such sickness as may begin more than ten days after the date of acceptance."

Paragraph C provides: "The term of this policy begins at twelve o'clock noon, Standard time, on date of delivery to and acceptance by the insured against accident and on the thirty-first day thereafter against disease, and ends at twelve o'clock noon on date any renewal is due."

Appellant thus states the issues: "1. Where an accident policy provides that it will lapse if premiums are not paid, but may be reinstated upon subsequent acceptance of a premium by the company, may coverage after reinstatement be restricted to a period less than the premium pays for if the policy omits such restriction? 2. Where receipts are issued for premiums given to reinstate a policy, do these receipts become a part of the policy and add to its terms?"

His position is "that premiums and coverage must be coextensive—that under the contract no penalty was provided for late payment, hence none could be assessed; that issuance of a receipt by the company could not

change the contract, because such action was wholly unilateral, there being no evidence of assent by insured, her silence or failure to protest being insufficient basis on which agreement could be predicated.''

Appellee, on the other hand, in effect, earnestly contends that reduced coverage was contemplated and necessary when the insurance was reinstated because appellee was put to extra expense to secure reinstatement (reinstatement being optional with appellee), that the insured understood and agreed to this condition for the reason that she accepted the receipts without protest, that the receipt thereby became a part of the insurance contract, and insured (as well as appellant here) was bound by its provisions.

The question presented seems not to have been heretofore decided by this court. The essential facts appear not to be in dispute.

The insurance contract alone contains no provision upholding appellee's contention that each quarterly premium when paid kept the policy in force only for the remainder of the month in which payment was made and the remaining two months, or until the next quarterly due date. Unless, therefore, the receipt countersigned by the company, and issued to the insured, became a part of the insurance contract, or unless the insured is bound by accepting same without objection, then appellant would be entitled to prevail in this action.

No rule is better settled than that insurance contracts which are prepared by the company, when any doubt arises as to construction, must be construed most strictly against the insurer. The contract before us contains no provision that reinstatement will date from the first day of the next quarter. It contains no provision making the receipt a part of the contract of insurance. Obviously, it would have been an easy matter for the company to have so provided in the policy by a simple provision to the effect that any fractional part of a month remaining after the date of reinstatement should be paid for by the insured as a full month, or that the receipt would become a part of the contract of insur-

ance. Nor do we think that the acceptance of these receipts by the insured, without protest, and which she did not sign, made it a part of the contract, or that by such acceptance insured was bound by its provisions, in the circumstances.

The general or prevailing rule of law applicable to situations such as are presented here, is stated in *Vol. 167 A.L.R.*, under the Annotations — Insurance-Reinstatement-Coverage, p. 340, § b. Other insurance, in this language: "Where an insurance policy is by its nature a *term insurance contract,* providing for no grace period, . . . it would seem that the effective date of coverage should begin at the date on which the policy is reinstated, running prospectively for that period which the amount of premiums paid will purchase. In the ordinary policy of health and accident insurance the exact duration of the risk assumed by the insurer is set out, and such policies, even without express provisions to that effect, are generally regarded as a species of term insurance, not renewable except with the consent of the insurer, differing in this respect from the policies of life insurance, wherein the right of reinstatement is preserved to the insured as a contractual right. . . .

"In connection with health and accident policies the prevailing rule seems to be that reinstatement has a prospective effect dating from the time of reinstatement. The theory underlying this rule is predicated, inter alia, on the view that reinstatement is, in effect, a renewal for another term, creating a new contract prospective in nature, and, as reinstated or renewed, the policy covers losses thereafter sustained. Equally persuasive to the courts is the knowledge that a retroactive dating would unjustly deprive the insured of insurance protection for which he has paid, and would have the effect of compelling the insured to pay for insurance throughout a period for which the insurer is admittedly not liable."

Bearing in mind that the policy here in question is a quarterly term policy, with no grace period, when reinstatement is permitted, as here, we think a full term of

three months was contemplated, creating a new contract prospective, in effect, to cover "accidental injuries thereafter sustained." Certainly, it would be unjust to require the insured to pay for insurance over a period, when she was not covered and during which time no liability or risk attached to the insurance company.

Appellee seems to rely strongly on such cases as *American National Insurance Company v. Otis,* 122 Ark. 219, 183 S. W. 183, L. R. A. 1916E, 875, but that case is clearly distinguishable. There, the policy contains a reinstatement clause which provided (quoting from the opinion) "that the company would not be liable for death occurring within five weeks from the date of the reinstatement, etc." There, reinstatement occurred on the fourth day of January, 1915, and the insured died January 19, 1915. The reinstatement clause, *supra,* is far different and contains no such provisions as in this Otis case.

So, also, is the case of *National Equity Life Insurance Company v. Bourland,* 179 Ark. 398, 16 S.W. 2d 6, distinguishable. That case involved the construction of a life insurance contract which, together with a rider attached, contained provisions not present in the contract now before us and upon which the opinion was based.

Accordingly, the judgment is reversed and the cause remanded for further proceedings.

McFADDIN, J., concurs.

The Chief Justice did not participate in the consideration or determination of this case, nor did he attend the conference at which it was discussed.