UNION LIFE INS. CO. v. RHINEHART.

5-1564                                    315 S. W. 2d 920

Opinion delivered July 1, 1958.

[Rehearing denied September 29, 1958.]

E. M. Arnold; M. J. Harrison, of counsel, for appellant.

Pope, Pratt & Shamburger by Richard L. Pratt, for appellee.

SAM ROBINSON, Associate Justice. The issue is whether under the terms of a "binding receipt" appellant insurance company is liable on a policy of insurance, the applicant having died before the policy was issued or the premium was returned to the applicant. There is no substantial dispute as to the facts, and from a judgment in favor of the beneficiary named in the application the insurance company has appealed.

On the 12th day of October, 1953, an agent for appellant, Union Life Insurance Company, procured from Edgar Hamilton Thomas an application for a $5,000 policy of life insurance. Thomas paid $119.00 as a year's premium in advance. The agent told him he was insured from that date and issued to Thomas what is called a "Binding Receipt", which provides: "This receipt must not be detached unless first premium is collected in

full at the time of application and shall operate as a BINDING RECEIPT under the conditions set forth below and on the reverse side hereof. Received from . . . representing premium in connection with this application for insurance in Union Life Insurance Company, said application bearing the same date and number as this receipt and which application contains applicant's declaration that he has paid the sum hereby receipted for and that he assents to the terms of this receipt. This receipt is subject to the terms and conditions shown on the reverse side hereof and agreed to by the applicant in the application. NOTICE: This receipt shall not cover insurance protection in excess of $75,000 on any one applicant nor for any premium for the insurance applied for except the first premium thereon which in no event shall be less than the premium for two months or more than one annual premium for such insurance together with the premium for preliminary term insurance if any."

On the reverse side: "FIRST — If a full first premium for the type of policy and amount of insurance applied for has been paid at the time of making this application, and as stated in this application, then the insurance so applied for (subject to all provisions of the policy contract applied for and in use by the company at this date) shall be effective as of the date of this application PROVIDED the applicant is on the date of this application or date of last examination, whichever is later, a risk acceptable to the Company on the plan and for the amount of insurance applied for, *otherwise the payment evidenced hereby shall be returned and this receipt shall be considered null and void.* (Emphasis supplied)

"SECOND — This receipt shall operate as a conditional receipt if the insurance is not effective coincident herewith under the exact conditions heretofore stipulated. If the application is not accepted exactly as made, then no insurance shall be considered in effect under the application. . . ."

In the application Thomas stated that he has or had been told that he had disorder of digestive organs such as appendicitis, stomach trouble, ulcer, etc., and heart disease or high blood pressure; that he had been confined to a hospital; that he had undergone a surgical operation; and that he had been rejected for military service because of hypertension. No medical examination was to be made in connection with the application. The application further provides that "any policy issued shall not take effect unless and until the first premium has been paid and the policy delivered to the applicant during the good health of applicant excepting only such conditions as may be disclosed in this application and during the lifetime of the applicant (*except if there is a receipt on the company's form and bearing the same number as this application given at the time of making this application and showing that the full first premium has been paid in cash, the terms and conditions of said receipt being hereby agreed to and accepted by the applicant*). That the acceptance by the applicant of any policy issued shall constitute ratification by the Applicant of any provision therein regarding war service and aviation and that the Company shall have the right to reject or amend this application and shall not be required to give cause to anyone for such action; that the company shall have sixty days from the date hereof within which to consider and act upon this application and if within such period a policy has not been received by me or if I have not received notice of approval or rejection, then this application shall be deemed to have been declined by the Company." (Emphasis supplied)

Soon after receipt of the application and annual premium, the insurance company notified its soliciting agent, who in turn notified Thomas, that a medical examination would be required. Thomas never submitted to a medical examination, and died on December 3, 1953, and it is agreed by the parties that if Thomas had lived sixty days the premium would have been returned to him.

The binding receipt certainly binds the insurance company to something. The applicant didn't need to be bound by the receipt; he paid the premium in advance. The words "binding receipt" imply that the insurance company is obligated in some manner. When all of the terms and conditions of the binding receipt and the application are considered, there is some ambiguity, which must be construed against the insurance company, as the receipt and application were on the printed forms of the company.

Litigation involving similar binding receipts has been before the courts many times and the decisions are far from harmonious. There is a long annotation on the subject in 2 A. L. R. 2d 943. As an introductory statement the annotator says: "It is the practice of most life insurance companies to state in their applications that the contract of insurance shall not take effect until the application has been approved by the company, the first premium paid by the applicant, and the policy delivered.

"Since, in the absence of a specific agreement, the payment of the first premium and the delivery of the policy are concurrent acts, a period intervenes between the signing of the application by the applicant and the delivery of the policy. During this period no money has been advanced to the insurance company, and no insurance is in effect. This interval, of a few days to several weeks, depending upon the time consumed in investigation and physical examination of the applicant, in passing upon his application at the home office, and in the traveling of the application and policy to and from the home office, is highly undesirable from the point of view of the insurer as well as of the applicant. The disadvantage to the applicant consists in the fact that he is not covered by insurance during this period, while the disadvantage to the insurer consists in the fact that during the period the applicant possesses the power to revoke the offer made in his application. This disadvantage is a very real one as far as the insurer is concerned, since if the applicant decides to exercise his power, either because he chooses not to carry any insurance at all, or because he chooses to purchase it of a rival com-

pany, the company suffers a loss of what it has expended for the investigation and medical examination of the applicant, aside from the loss of business itself.

"To obtain some measure of protection against the applicant's arbitrary withdrawal of his offer during the company's extensive investigation of his insurability, the insurance companies have hit upon the idea of issuing so-called binding receipts to the applicant upon the payment of the first premium. These binding receipts, or conditional binding receipts, as these instruments are sometimes, though less frequently, called, usually contain a provision which, in some instances, is duplicated in the application itself, to the effect that the insurance shall be considered as in force from the date of the receipt, or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Sometimes the date of approval or of issuance of the policy is chosen as the date the policy shall become effective, and in some instances no condition is imposed upon the applicant. The exact language of these provisions varies greatly.

"The issuance of these binding receipts effectively does away with the disadvantage threatening the insurer. They protect it in two ways: The applicant to whom a binding receipt is issued feels, as a rule, contractually obligated to perform and, should he withdraw his application, he is unlikely to resort to a law suit to recover the relatively small sum paid. In addition to achieving this primary object, the issuance of a binding receipt has the incidental advantage for the insurer that it serves to give the insurer the use of the premium money at the earliest date possible and that it offers a selling point of which no agent fails to make the utmost in his talks with prospective customers."

The validity of contracts for temporary insurance in the nature of binding receipts is well established. In *Cooksey* v. *Mutual Life Ins. Co.*, 73 Ark. 117, 83 S. W. 317, the court said: "It is not an unfamiliar custom among life insurance companies in the operation of the business, upon the receipt of an application for insur-

ance, to enter into a contract with the applicant in the shape of a so-called 'binding receipt' for temporary insurance pending the consideration of the application, to last until the policy be issued or the application rejected, and such contracts are upheld and enforced when the applicant dies before the issuance of a policy or final rejection of the application. It is held, too, that such contracts may rest on parol.'' It will be recalled that in the case at bar the insurance went into force as of the date of the application unless the application was rejected and the premium returned to the applicant.

Appellant cites quite a few cases which it is claimed sustain the contention that under the terms of the binding receipt in the case at bar the insurance was not in force at the time of applicant's death, but most of these cases are distinguishable from the case at bar. In *Reynolds* v. *Northwestern Mut. Life Ins. Co.,* 189 Iowa 76, 176 N. W. 207, there is no showing of the failure to return the premium, as in the case at bar. In fact, just the contrary is indicated. *Warren* v. *New York Life Ins. Co.,* 128 F. 2d 671, provides for medical examination, and there was no return of premium clause in the binding receipt in that case. *Gonsoulin* v. *Equitable Life Assur. Soc.,* 152 La. 865, 94 So. 424, provides that the premium shall be returned on demand and surrender of receipt. There is no such provision in the receipt involved in this case. And to the same effect are other cases, such as *State ex rel. Equitable Life* v. *Robertson,* Mo., 191 S. W. 989; *New England Mut. Life Ins. Co.* v. *Hinkle,* 248 F. 2d 879. In *Kronjaeger* v. *Travelers Ins. Co.,* 124 W. Va. 730, 22 S. E. 2d 689, no binding receipt was given. The applicant was given an ''informal receipt'', but the terms of that receipt are not shown. In *Paulk* v. *State Mutual Life Ins. Co.,* 85 Ga. App. 413, 69 S. E. 2d 777, applicant was required to take a medical examination. In that case it was said: ''Since the applicant was required to take the medical examination, after which the company would determine whether or not the applicant was an acceptable risk, no valid contract of insurance arose in the absence of approval by the company.'' In *Leube* v. *Prudential Ins. Co.,* 147 Ohio St. 450, 72 N. E. 2d 76, 2 A. L. R. 2d 936, the receipt con-

tained no provision for cancellation by return of premium, and in that case the court said: "Where a preliminary or temporary contract provides that it shall be operative from its date or other specified date subject to acceptance of the application or approval of the risk, it is effective from the specified date according to its terms where the company accepts the application or approves the risk; but where the company exercises its rights of disapproval in the *manner specified* the insurance ceases instantly, and no liability arises thereunder." (Emphasis supplied) In the case at bar the company did not exercise its right of disapproval in the manner specified in the receipt, which was by the return of the premium.

*Stonsz* v. *Equitable Life Assur. Soc.*, 324 Pa. 97, 187 A. 403, 107 A. L. R. 178, is very similar to the case at bar. In speaking of the binding receipt the court said: "The purpose of this clause, 'insurance ... shall take effect as of the date of this receipt' was to provide an inducement for the payment by appellee of the first premium in advance and to give preliminary protection to the insured until the issuance of the policy. . . . If this clause of the receipt was not intended to provide interim insurance to appellee as a separate and distinct contract from the policy to be issued, what is its effect?" No answer has been suggested in any of the cases except that the binding receipt is a form of temporary insurance, which goes into effect as of the date of the receipt.

In *Albers* v. *Security Mut. Life Ins. Co.*, 41 S. D. 270, 170 N. W. 159, the court said: "If the company did not intend that there should be insurance effective pending the date of the application and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the approval. This would not be dealing honestly with the insured. By the payment of the premium for one year an insured is entitled to insurance for one year." And the court said, in *Starr* v. *Mutual Life Ins.*

*Co. of N. Y.*, 41 Wash. 228, 83 P. 116: "If there was to be no contract of insurance in any event until the application was approved at the home office and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application or not. If he lived until the application was approved and a policy issued, it would seem a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiaries would derive no benefit from the insurance. The chief object of the provision would, therefore, seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk."

Appellant insurance company contends that the application for insurance was rejected and the applicant so notified, and that since the application was not accepted there is no liability on the part of the insurance company. It is admitted, however, that the premium was not refunded to the applicant. The binding receipt specifically sets out the terms and conditions upon which the receipt can be considered void, and that was by a return of the premium. The binding receipt put the insurance into effect as of the date of the receipt (there was to be no medical examination) provided the applicant was a risk acceptable to the company, and if the applicant was not an acceptable risk the premium was to be returned. The premium was not returned. True, the insurance company had sixty days in which to decide whether to issue a policy, but in the meantime the temporary insurance was in force unless the company avoided that risk by returning the premium. This was not done.

Affirmed.

GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, J., dissenting. It is certainly a sound rule that an ambiguity in an insurance contract is to be construed against the insurer, but I cannot see what the

rule has to do with this case. The majority say: "When all of the terms and conditions of the binding receipt and the application are considered, there is some ambiguity, which must be construed against the insurance company * * *" Yet nowhere in the majority's fairly long opinion is there a sentence or even a word stating in what respect the receipt and application are ambiguous. The courts have often condemned the practice of creating an ambiguity, where there really is none, in order to resolve it against the insurer; but it is something new for a court merely to announce the rule and on that basis hold the insurer liable, without at least suggesting what language is ambiguous.

The majority also state: "The binding receipt certainly binds the insurance company to something." It certainly does. It binds the company to issue a policy *as of the date of the receipt* if the applicant is a risk acceptable to the company. That obligation is illustrated in two of the three cases relied upon by the majority, the *Albers* case and the *Starr* case. In both those cases the insured was in fact in good health when the binding receipt was issued and was later approved as a risk acceptable to the company. In both cases the applicant died before the policy was delivered. It was correctly held in each case that the company was liable, for that interim protection is exactly what the binding receipt provides. Of course the distinction is that in those cases the applicants were acceptable risks; here Thomas was admittedly not an acceptable risk.

It is convenient at this point to mention the only other decision relied on by the majority, the *Stonsz* case, which the opinion describes as "very similar to the case at bar." Very similar? In that case the insured was not only in good health but the policy was actually issued and delivered to him. The company, however, had dated it as of its issuance rather than as of the issuance of the binding receipt, and the only question was its liability for disability arising in the interim. I find it difficult to discover the similarity.

Laying aside the matters just mentioned, I come to what seems to be the sole reason for imposing liability in

this case: the fact that the insurer had not returned the premium at the time of the applicant's death. That point can be considered in either of two ways, but in neither instance can it be said to have resulted in the creation of a contract of insurance between the parties.

First, was it the insurer's duty to return the premium within less than sixty days after the issuance of the binding receipt? I cannot see that it was. The company had sixty days in which to decide whether Thomas was an acceptable risk. If Thomas had died during the sixty days and also before the company had reached its decision, the insurer would not have been liable if it later determined in good faith that Thomas was not insurable.

The only difference is that here the company reached its decision, in good faith, before the applicant's death. It notified Thomas that the policy could not be issued without a medical examination, but it did not return the premium, *nor did Thomas ask that it be returned*. Under the majority's reasoning the insurance contract must have come into existence at that instant, for neither party ever took any other step toward the making of a contract. In other words at that point, because the premium had not been returned pending the medical examination, Thomas could have brought a suit for specific performance to require that the policy be issued. I need not dwell on the patent fallacies in this reasoning. Of course Thomas could have requested the return of his premium, but he chose not to do so. He knew that the company was unwilling to issue the contract; so how can it be said that there was a meeting of the minds, when neither party to the transaction either thought or had the slightest reason to think that an agreement had been reached?

Second, if we assume for the sake of argument that the company was required to return the premium pending the medical examination, what then? The plain answer lies in the language of the binding receipt: that receipt continued in force rather than becoming "null and void." Thomas's rights, and those of his estate or beneficiary, must then be determined by the provisions of the receipt, which declares in unambiguous language that the insur-

ance shall not be effective unless the applicant is a risk acceptable to the company. It has never been suggested that the company did not act in good faith in determining that Thomas was not an acceptable risk. Thus even if we regard the receipt as having been in force at the time of Thomas's death, it is still not a basis for affirming this judgment.