NATL. LIFE & ACCIDENT INS. CO. *v.* BAKER.

5-2608                                                    354 S. W. 2d 1

Opinion delivered February 19, 1962.

*House, Holmes, Butler & Jewell,* for appellant.

*Alonzo D. Camp,* for appellee.

PAUL WARD, Associate Justice. Appellee, Erma Jean Baker, as the named beneficiary in an application for insurance applied for by Mrs. Lueva Carroll (now deceased), brought suit against appellant, The National Life and Accident Insurance Company, to recover $750 together with attorney's fee and the statutory penalty.

The cause was submitted to the trial court on the complaint, answer, and stipulated facts. From a judgment in favor of appellee this appeal is prosecuted, seeking a reversal.

*Essential Facts.* On July 13, 1960 appellant issued and delivered to Mrs. Carroll the following "Conditional Receipt for Premium Deposit";

| Name of Proposed Insured | Plan | Amount of Deposit |
| --- | --- | --- |
| Lueva Carroll | PM S | $1.96 |

"$1.96 received of Same (Name of person making payment) as premium deposits on policies of insurance described above for which application is this day made to The National Life and Accident Insurance Co.

"If any policy is issued, the premium deposit for said policy will be applied toward the payment of premiums thereon. If the application for any policy is declined, or if any policy is issued other than as applied for and is not accepted, the premium deposit for that policy will be refunded.

"If both the following conditions are satisfied:

"(1) the amount of the premium deposit for a policy is at least equal to (a) two weekly premiums on said policy if premiums thereon are payable weekly, or (b) the premium for one full month on said policy if premium thereon are payable monthly or less frequently; and (2) the proposed Insured is, on the date of said deposit and on the date of any required medical examination, insurable and acceptable in the opinion of the Company's authorized officers in Nashville, Tennessee under the Company's rules and practices for the plan, amount of insurance, and premium applied for; then upon the death or bodily injury of the Proposed Insured prior to the Date of Issue of said policy and within thirty-one days of the date of said deposit, the Company will pay the benefit, if any, which would have been payable under the provisions of said policy had its Date of Issue been the date of said deposit.

No benefits shall be payable under the Conditional Receipt for disability from sickness.

No Field Representative of the Company has authority to waive, alter or modify any term of this Receipt, or to bind the company in any way other than as specifically provided in this Conditional Receipt.

This Conditional Receipt is not valid if its date differs from the date of the application, or if any check tendered as a deposit is not honored upon presentation for payment.

THE NATIONAL LIFE AND ACCIDENT COMPANY

(signed) J. S. Cruickshanks
(signature of Licensed Resident
Representative)

Date: 7/13/60　　　　LR　　　　11

DISTRICT DEBIT''

On the back of the receipt was the following ''Notice to Holder of Conditional Receipt'':

''This Receipt is valuable. Do not destroy or lose.

''If you do not, within 31 days from the date of the deposit, receive either a policy or the return of your deposit, present this receipt for redemption at the District Office, or the Home Office in Nashville, Tennessee.

THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY

''If the Company declines to issue insurance, or if the Proposed Insured or his representative declines to accept a policy issued otherwise than as applied for, the amount deposited must be returned to the person who paid it. Such person will receipt for return of deposit below.

''I acknowledge the return to me of my deposit of $................ made to The National Life and Accident Insurance Com-

pany on an application for insurance for which I did not receive a policy.

Date: ...........................

Debit No........................

> Proposed Insured, or Person who made deposit, if other than Proposed Insured.          District."

On the same date, July 13, 1960, Mrs. Carroll paid to appellant's agent the sum of $1.96 which was sufficient to pay two weekly premiums on the policy when and if issued, and she also signed an application for a $750 life insurance policy to be issued by appellant on certain conditions later discussed. She answered all questions in the application relative to her physical condition, but was not required to be examined by a doctor. All these transactions were between her and appellant's duly authorized local agent, J. S. Cruickshanks. Appellee was named as beneficiary in the application.

The application for insurance was declined and rejected by appellant at its Home Office in Nashville, Tennessee, prior to July 27, 1960 because Mrs. Carroll was found to be "uninsurable and unacceptable" under its rules and practices. Notice of the rejection of the application reached the local office in Little Rock on Thursday July 28, 1960. On July 30, 1960 Mrs. Carroll died of natural causes. On Monday, August 1, 1960 when the local agent went to the home of Mrs. Carroll to return to her the $1.96 he learned of her death. Thereupon he tendered the money to her daughter, appellee, but she refused to accept it, saying "they" would wait. The money was thereafter deposited in court.

Based on the above facts and the applicable law we have concluded the trial court was in error in rendering judgment in favor of appellee.

To sustain the judgment of the trial court appellee relies almost exclusively on our decision in the case of *Union Life Ins. Co. v. Rhinehart,* 229 Ark. 388, 315 S. W. 2d 920. However, a casual reading of that case reveals a clear and vital distinction between it and the present case in respect to the facts. A short excerpt from the opinion in the cited case will suffice to point out the basis on which it was decided:

"The binding receipt specifically sets out the terms and conditions upon which the receipt can be considered void, and that was by a return of the premium. The binding receipt put the insurance into effect as of the date of the receipt . . . provided the applicant was a risk acceptable to the company, and if the applicant was not an acceptable risk the premium was to be returned. The premium was not returned. True, the insurance company had sixty days in which to decide whether to issue a policy, but in the meantime the temporary insurance was in force unless the company voided that risk by returning the premium. This was not done."

In other words, according to the receipt in the cited case, the insurance was in effect from the date of issuance and was to remain in effect unless voided by subsequent action on the part of the company.

In the case before us the above mentioned situation was just the reverse. There was to be no insurance until the company took subsequent action, viz: determine Mrs. Carroll to be "insurable and acceptable". This meaning of the receipt is supported by and is in conformity with other words and clauses contained therein, viz.: It is designated a "conditional" receipt; "if the policy is issued"; "if the application" is declined . . . "the premium will be returned". If the above language does not make it clear that Mrs. Carroll was to have no protection until the appellant accepted her as insurable, then we are at a loss to know what language would make it clear. Any other interpretation of the English language would cast a cloud of uncertainty on any written contract. After all, insurance appli-

cations and policies are to be interpreted like other contracts, particularly where there is no ambiguity in the language. This was forcefully stated in *Eyring et al* v. *Kansas City Life Ins. Co.*, 234 Mo. App. 328, 129 S. W. 2d 1086, where it said:

"But unless such an ambiguity or uncertainty exists there is no more room for construction of an insurance contract, legally and fairly entered into by the parties, than there is for construction of any other contract. 'The court cannot make contracts for the parties, and it is its duty to enforce them as the parties have made them.' "

A situation analogous to the case under consideration in principle and similar as to facts was before this Court in the case of *Cooksey* v. *Mutual Life Insurance Company*, 73 Ark. 117, 83 S. W. 317 where Cooksey had signed an application for insurance containing this language:

"I have paid $.................... to the subscribing soliciting agent, who has furnished me with a binding receipt therefor, signed by the secretary of the company, making the insurance in force from this date, provided this application shall be approved, and the policy duly signed by the secretary at the head office of the company and issued."

The solicitor gave Cooksey a receipt, dated November 27, 1900 which showed $45.96 paid on premium to be returned if the company declined to issue the policy. Cooksey was examined the same day by a physician who recommended acceptance of the application. The application was received by the general agent in Little Rock December 3, 1900 and forwarded to the home office in New York where it was received December 7 and approved again by the physician there in charge. The application was then referred to the inspector of risks who, on December 10, 1960, wrote the Little Rock agent for further information concerning Cooksey's occupation. Before the investigation was completed and final action

was taken by the company, Cooksey died on December 14. Cooksey's administrator filed suit against the company, contending there existed temporary insurance pending the processing period. The trial court directed a verdict in favor of the company. This court, in affirming the trial court, said:

"It is not an unfamiliar custom among life insurance companies in the operation of the business, upon receipt of an application for insurance, to enter into a contract with the applicant in the shape of a so-called 'binding receipt' for temporary insurance pending the consideration of the application, to last until the policy be issued or the application rejected, and such contracts are upheld and enforced when the applicant dies before the issuance of a policy or final rejection of the application. It is held, too, that such contracts may rest in parol. Counsel for appellant insists that such a preliminary contract for temporary insurance was entered into in this instance, but we do not think so. On the contrary, the clause in the application and the receipt given by the solicitor, which are to be read together, stipulate expressly that the insurance shall become effective only when the 'application shall be approved and the policy duly signed by the secretary at the head office of the company and issued'. It constituted no agreement at all for the preliminary or temporary insurance."

In our opinion the reasoning applied in the above case is controlling here, and calls for a reversal of the trial court.

The *Cooksey* case has never been overruled but has been cited with approval several times by this and other courts. See: *Mutual Life Ins. Co.* v. *Jordan, Guardian,* 111 Ark. 324, 163 S. W. 799; *National Union Fire Ins. Co.* v. *School District No.* 55, 122 Ark. 179, 182 S. W. 547; *Aetna Ins. Co.* v. *Short,* 124 Ark. 505, 187 S. W. 657; *American Ins. Co.* v. *School District No. 23,* 182 Ark. 158, 30 S. W. 2d 217; and, *Bellak* v. *United Home Life Ins. Co.,* 6 Cir., 211 F. 2d 280. There are numerous cases from other jurisdictions on fact situations very

similar to those here, holding that no interim insurance obtains pending acceptance of the applicant as a risk or pending the issuance of a policy of insurance. See: *Gonsoulin v. Equitable Life Assur. Soc'y,* 152 La. 865, 94 So. 424; *Reynolds v. Northwestern Mutual Life Ins. Co.,* 189 Iowa 76, 176 N. W. 207; *The National Life and Accident Ins. Co. v. Fox,* 165 Tenn. 264, 54 S. W. 2d 951; *Olson v. American Central Life Ins. Co.,* 172 Minn. 511, 216 N. W. 225; *Kronjaeger v. Travelers Ins. Co.,* 124 W. Va. 730, 22 S. E. 2d 689; *Leube v. Prudential Ins. Co. of America,* 147 Ohio 450, 72 N. E. 2d 76; and *Brancato v. National Reserve Life Ins. Co.,* 8 Cir., 35 F. 2d 612.

We are aware of the numerous decisions, many of which are cited in 2 A. L. R. 2d at pages 943 *et seq.,* which hold, as this Court holds in the *Rhinehart* case, *supra,* that an application and a receipt do create interim insurance; but, generally speaking, these decisions are based on the peculiar wording of such instruments not present in this case. In any event our Court has already chosen the course it desires to pursue and we think it is sound and reasonable.

It follows therefore from what we have said heretofore that the judgment of the trial court should be, and it is hereby, reversed and the cause of action against appellant is dismissed.

Reversed and dismissed.

McFADDIN and JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. I dissent because it is my firm conclusion that the Majority, in reversing the judgment of the Trial Court, is doing substantial violence to our long-established rule that any ambiguity in an insurance contract is to be construed most strongly against the company and most liberally in favor of the insured or beneficiary. Some cases so holding are: *Life & Cas. Ins. Co. v. Kinney,* 206 Ark. 804, 177 S. W. 2d 768; and *Halley v. Mutual Benefit Assn.,* 215 Ark. 907, 223 S. W. 2d 759. I maintain that an application of this rule would result in an

affirmance of the judgment; and I will now undertake to point out the ambiguities that exist in the document issued by the Insurance Company. The material stipulated facts are:

(a) That on July 13, 1960 the Insurance Company received from Lueva Carroll $1.96, which was sufficient "to pay, in advance, two (2) weekly premiums" on the policy applied for;

(b) That the duly authorized agent of the Insurance Company issued to Lueva Carroll an instrument entitled "Conditional Receipt for Premium Deposit" (this instrument will be further discussed when I point out the ambiguities in it);

(c) That Lueva Carroll's application was forwarded to the Home Office of the Insurance Company, and "prior to July 27, 1960" the Company decided that she was not "insurable" and directed the agent to return the $1.96 to her; and

(d) That Lueva Carroll died on July 30, 1960, before the agent ever returned the $1.96 to her.

Now let us consider the ambiguities in the "Conditional Receipt for Premium Deposit." It is copied in full in the Majority Opinion, and there are two ambiguities—the first of which is not as obvious as is the second.

(1) The receipt was for two weekly premiums on the policy; it provided that if Lueva Carroll was "*on the date of said deposit* . . . insurable and acceptable in the opinion of the Company's authorized officers in Nashville, Tennessee . . .," then upon her death "prior to the date of issue of said policy and within 31 days of the date of said deposit" the Company would pay the amount of the policy. There is no testimony in this case concerning whether the applicant was uninsurable "on the date of said deposit"; and that is the first ambiguity. No physical examination was required of Lueva Carroll, and evidently the agent who wrote the application and issued the premium receipt

must have thought that she was insurable on that date. The only stipulation directed to uninsurability relates to some decision in the Company Office "prior to July 27, 1960."

(2)   But the more serious ambiguity is contained in the language on the back of the conditional receipt. It says: "If the Company declines to issue insurance . . . the amount of the deposit must be returned to the person who paid it." That language means that the burden was on the Insurance Company to make the return of the deposit to Lueva Carroll in her lifetime, and not to tender a return of the deposit to the beneficiary after the death of Lueva Carroll. The Insurance Company absolutely failed to tender the return of the deposit to Lueva Carroll in person, and that is what the Insurance Company said it had to do. This language is clear and unequivocal; but, if—when construed with the other language of the receipt—there is any ambiguity, then that ambiguity must be resolved against the Insurance Company, just as the Trial Court did. I maintain that the case at bar falls clearly within the rule of *Union Life Ins. Co.* v. *Rhinehart*, 229 Ark. 388, 315 S. W. 2d 920, and does not come within any exception as in *Cooksey* v. *Mutual Life Ins. Co.*, 73 Ark. 117, 83 S. W. 317.

There is a splendid Annotation in 2 A. L. R. 2d 943, entitled, "Temporary life, accident, or health insurance pending approval of application or issuance of policy." In the opening section of that Annotation there is pointed out the history of the "binding receipts"; and from that paragraph we see that a binding receipt (or a "Conditional Receipt for Premium Deposit" as it is designated in this case) is an attempt by the Insurance Company to "both have its cake and eat it." The Insurance Company wants to bind the applicant to take the policy when issued; so it takes the premium in advance with the understanding that when the policy is issued it will date back to the date of the application. But, in order to try to avoid liability from date of receipt of the money, the insurance companies have resorted to all sorts of lan-

guage. When the Insurance Company in this case chose its language and stated that it had to pay the money back to Lueva Carroll in person, the Insurance Company bound itself that if she died before the return of the money, then the Insurance Compnay would pay the policy benefits. I do not see how the Majority can evade such a clear application of the law; and I therefore respectfully dissent.