**HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Harley E. HOLCOMB, Virgil George Billings and Donnie D. Perkins, Defendants.**

**No. F–68–C–11.**

United States District Court
W. D. Arkansas,
Fayetteville Division.

Aug. 15, 1969.

Bethell, Stocks, Callaway & King, Fort Smith, Ark., for plaintiff.

Kent Watson, Siloam Springs, Ark., for Holcomb and Perkins.

Lewis D. Jones, Fayetteville, Ark., for Billings.

## OPINION

JOHN E. MILLER, Senior District Judge (sitting by designation).

Suit was filed by plaintiff for a declaratory judgment of non-liability on automobile liability policy No. 03–04386–53 covering the period from September 25, 1966, to September 25, 1967, and an adjudication that it had no obligation to defend Case No. 6216 in the Circuit Court of Washington County, Arkansas, brought by defendant Virgil George Billings against defendants Harley E. Holcomb and Donnie D. Perkins to recover on claims arising out of a collision on May 2, 1967, between automobiles being driven by defendants Perkins and Billings.

Jurisdiction is established by diversity of citizenship of the parties and the amount involved.

In due time Billings filed his answer, in which he prayed that the complaint of plaintiff be dismissed: that the court enter a declaratory judgment declaring that the attempted cancellation of the policy of insurance on May 24, 1967, by plaintiff is null and void, and that said policy was in full force and effect on May 2, 1967.

On July 1, 1968, Holcomb filed his answer, in which he alleged that Perkins is his son-in-law, and that he sold the car involved to his daughter and that he did not own said car nor had any control over it at the time of the collision.

Perkins filed his answer August 14, 1968, in which he admitted the collision between an automobile driven by him and one driven by Billings, and further admitted:

"Donnie D. Perkins admits that Harley E. Holcomb is his father-in-law and that Harley E. Holcomb had sold the car stated in plaintiff's complaint to his wife, Carolyn, and that Harley E. Holcomb did not own said car or had any control over said car."

On November 14, 1968, the plaintiff filed its motion for summary judgment, based upon (1) policy of insurance attached to the complaint as Exhibit A; (2) depositions of Billings, Holcomb, and Mrs. Donnie D. Perkins, nee Carolyn Holcomb, and William C. Adair; (3) the security agreement executed by Mrs. Perkins to Bynum Motor Company; and (4) the "auto rating statement" executed by Holcomb on September 20, 1966, as referred to in the deposition of Adair.

On November 25, 1968, Billings filed his response to the plaintiff's motion for summary judgment, in which he stated:

"Agrees that there is present in this matter no genuine issue of justiciable

fact which could be determined by a jury."

However, he denied that plaintiff was entitled to a summary judgment and proceeded to file his motion for summary judgment.

On February 24, 1969, Holcomb and Perkins filed their response to plaintiff's motion for summary judgment, in which they denied that the 1963 Plymouth, the car in question, was not an "owned automobile" and denied that the plaintiff's agent was not aware of the sale of the automobile by defendant Holcomb to his daughter, Carolyn Holcomb Perkins.

Briefs in support of the contentions of the parties were filed with the court. On February 27, 1969, the court, Judge Paul X. Williams presiding, entered an order overruling both motions for summary judgment.

On April 8, 1969, Billings filed a request for a jury trial. The plaintiff filed a motion to strike the request, and on April 18, 1969, the court, with Judge Paul X. Williams presiding, denied the motion to strike.

On July 24, 1969, the court entered an order fixing August 12, 1969, as the date for trial on the merits. On the date fixed for trial the court denied the request for jury trial and the case was tried to the court.

Holcomb had for several years owned two automobiles, each covered by the liability policy issued by plaintiff and renewed yearly by issuance of a new policy. The policy that was issued immediately preceding the policy in question was effective from September 25, 1965, to September 25, 1966, and covered a 1963 Plymouth Belvedere and a 1961 Plymouth Fury. Holcomb's daughter, Carolyn, was not married at that time and was living at home with her father and mother and a sister. She had permission from Holcomb to drive either of the automobiles.

A short time prior to May 21, 1966, Holcomb decided that he desired to purchase a new automobile and discussed the matter with his daughter, Carolyn. As a result of the discussion it was agreed that Carolyn would take the 1963 Plymouth and assume the car payments while Holcomb would take the 1961 Plymouth and turn it in as part payment on his new car. Carolyn testified that, in accordance with the understanding, she took possession of the 1963 Plymouth in July 1966, but in the opinion of the court she is mistaken as to the date. Her father testified that she took possession of the 1963 car as owner in accordance with their agreement on May 21, 1966. On that date she executed a promissory note and security agreement in the sum of $861.12, balance due on the 1963 car, to Bynum Motor Company, Siloam Springs, Arkansas. The 1963 car was in her exclusive possession from May 21, 1966.

Carolyn Holcomb married Perkins on September 23, 1966. They were living at 624 South Sang Street in Fayetteville, Ark., at the time of the collision between the automobiles.

She was not a member of her father's household at any time after her marriage until after the collision of the automobiles.

While Carolyn agreed to resume and make all car payments on the 1963 Plymouth, she apparently was financially unable to do so, and her father made some of the payments prior to the date of the collision.

Holcomb purchased the new car, the 1966 Plymouth, either on May 21, 1966, or immediately thereafter. Following the purchase of the 1966 Plymouth, Holcomb executed an "auto rating statement" in which he stated the names of all drivers in his household as "Harley E. Holcomb, Nina B. Holcomb, Barbara Ann Holcomb."

The policy involved herein provided that it was effective from September 25, 1966, through September 25, 1967, and described the owned automobiles as a 1963 Plymouth Belvedere 4–D–8 and a 1966 Plymouth Fury III, 4–D–8. Item

VI of the declarations of Holcomb in the policy reads as follows:

"The automobile(s) described in Item 3 are solely owned by the named insured, subject to the interest of any lienholder therein, unless otherwise stated herein."

The named insured was Harley E. Holcomb.

The agent of plaintiff, William C. Adair, did not learn that the 1963 Plymouth had been sold to Carolyn until May 3, 1967, the day after the accident. On May 24, 1967, he executed a "policy change notice," removing from the policy the 1963 Plymouth and asking that a retroactive premium credit be issued to Holcomb.

Carolyn never obtained a certificate of title, but did register the 1963 Plymouth in her own name and received a license tag for the year of 1967.

Billings does not specifically contend that the insuring provisions of the policy are ambiguous, but nevertheless contends that the policy should be construed most strictly against the plaintiff.

In Securities and Exchange Commission v. Arkansas Loan & Thrift Corp., (W.D.Ark.1969) 297 F.Supp. 73, the court, in considering a similar contention, said at page 80:

"Second, an insurance contract is to be construed like any other contract, where there is no ambiguity in the language. National Life & Accident Ins. Co. v. Baker, (1962) 234 Ark. 670, 354 S.W.2d 1. In this respect, the law of Arkansas relative to the construction of insurance contracts differs in no respect from that almost universally applied. Jefferson Insurance Co. of Pine Bluff, Ark., v. Hirchert, (8 Cir. 1960) 281 F.2d 396. Third, the contract will, in the event of an ambiguity, generally be construed strongly against the company and liberally in favor of the insured or obligee. Morley v. McGuire, (1951) 219 Ark. 206, 242 S.W.2d 112; Trinity Universal Ins. Co. v. Willbanks, (1940) 201 Ark. 386, 114 S.W.2d 1092.

The rule of strict construction does *not* mean that the courts may strain the construction of nonexistent ambiguity. In Jefferson Insurance Co. of Pine Bluff, Ark., V. Hirchert, supra, the Court of Appeals for the Eighth Circuit, at page 400 of 281 F.2d stated:

" 'Mr. Justice Sutherland, in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416, stated the rule as follows:

" ' " * * * It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. * * * This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

" ' "Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense. * * * " ' "

■ The court perceives no ambiguity in the provisions of the policy now under consideration. The material facts are not controverted. Holcomb's daughter had been driving the cars owned by her father. She evidently desired to own a car and to have exclusive possession of it. In accordance with the agreement of Holcomb and his daughter, she became the owner on May 21, 1966, of the 1963 automobile that was described in the policy. Holcomb purchased the 1966 car described in the policy about that time. He had no interest in the 1963 automobile after the date of the sale. The policy in suit was written upon the declaration of Holcomb that

the automobiles described in the policy were solely owned by him. His daughter was living in Fayetteville in an apartment with her sister at that time.

Under "Definitions," Part I of the policy, the following appears:

"'Owned automobile' means—

"(a) a private passenger or utility automobile described in the declarations."

Billings contends that, as the 1963 automobile was described in the policy, Holcomb had the power to give permission to anyone to drive the automobile as provided in the policy.

Under the title "Persons Insured," the policy provides:

"The following are insureds under the Liability Coverage:

"(a) with respect to an owned automobile,

(1) the named insured,

(2) any other person using such automobile to whom the named insured has given permission, provided the actual use is within the scope of such permission.

"(b) with respect to a non-owned automobile,

(1) the named insured,

(2) a relative, but only with respect to a private passenger automobile or utility trailer,

provided the person using such automobile has received the permission of its owner and is using it within the scope of such permission;"

Under "Definitions" applicable to Part I of the policy, the word "relative" is defined as:

"* * * a person related to the named insured who is a resident of the same household, but does not include any person who, or whose spouse, owns a private passenger automobile."

Billings contends that Carolyn never obtained title to the 1963 automobile for the reason that certificate of title was not assigned to her, and that Holcomb thus retained ownership of the automobile.

Briefly, the plaintiff contends that the named insured, Holcomb, had no interest in the 1963 car at the time of the collision and for several months prior thereto; that Carolyn and her husband had sole possession of the automobile at the time of the collision; and that the sale was complete and title passed to Carolyn even though the certificate of title was not formally assigned to her.

In House v. Hodges, (1957) 227 Ark. 458, 299 S.W.2d 201, the court, in considering the effect of the failure by a purchaser to obtain a certificate of title, said at page 462 of 227 Ark., at page 203 of 299 S.W.2d:

"We find nothing in the Motor Vehicle Act which states that a bona fide sale of a vehicle cannot be made except by an immediate assignment of certificate of title."

The court further held that the certificate of title is not title itself, but only evidence of title.

House v. Hodges, supra, has been cited and followed with approval in Snuffy Smith Motors v. Universal C.I.T. Credit Corp., (1963) 236 Ark. 954, 370 S.W. 2d 808; Masterson v. Tomlinson, (1968) 244 Ark. 208, 424 S.W.2d 380; Commercial Credit v. Associates Discount, (1969) 246 Ark. 116, 436 S.W.2d 809; In re Ford, (E.D.Ark.1960) 186 F.Supp. 252; Olin Mathieson Chem. Corp. v. Southwest Cas. Co., (W.D.Ark.1957) 149 F.Supp. 600.

Billings also contends that Carolyn's husband, Donnie D. Perkins, was operating the car at the time of the accident with the permission of the named insured, Holcomb, but without doubt the car was being operated by the husband of Carolyn under her claim of ownership.

■ The provision in the policy heretofore quoted to the effect that an insured may be "any other person using such automobile to whom the named insured has given permission provided the actual use is within the scope of such permission," does not aid the defendants for

the reason that the named insured, Holcomb, had no right or power to give permission to anyone because he was not the owner of the car.

Even though the sale by Holcomb to his daughter be considered a conditional sale, the fact remains that Carolyn and her husband were in charge of the car under claim of ownership. The possession of Carolyn and her husband was by virtue of her ownership and the automobile was being operated at the time of the collision under their own right and not with the permission of the original named insured. Olin Mathieson Chem. Corp. v. Southwest Cas. Co., supra; Standard Acc. Ins. Co. v. Wilmans, (E. D.Ark.1963) 214 F.Supp. 53, 59; Home Indemnity Co. v. Bowers, (1952) 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d 668. See, also, Annotation, 36 A.L.R.2d 675, § 2.

In 7 Am.Jur.2d, Automobile Insurance, § 115, p. 428, it is stated:

"The word 'permission' or 'consent' connotes the power to grant or withhold it, and therefore, in order for one's use and operation of an automobile to be within the meaning of an omnibus clause requiring the permission or consent of the named insured, the latter must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission. * * *

"If a valid sale has occurred and possession of the automobile is delivered to the buyer, subsequent use by the buyer is by virtue of his ownership of it and his right to control it, and not by virtue of the grant to him of any permission by the seller, and therefore cannot constitute use 'by permission' of the insured seller within the meaning of the omnibus clause provision. This rule applies both to absolute purchases and to conditional sales. The reason for this rule is that where the automobile has been transferred to another, even if only under a conditional sales agreement, the automobile is no longer owned by the insured vendor in such a sense as will, legally speaking, enable the insured to give or withhold his permission or consent to the use of the automobile by the conditional vendee, since the vendor, though retaining title to the car until fully paid for, does so for security reasons only and has no control over the car and no right to its use. Nor does the fact of a default in payment by the conditional vendee and the fact that the conditional vendor 'permitted' the vendee thereafter to remain in possession and control of the automobile bring the vendee and his guests within the omnibus clause of the policy."

It is undisputed that the plaintiff had no knowledge of the sale of the 1963 car to Carolyn and no steps were taken by anyone to transfer any insurance to the 1963 car. In fact, as heretofore stated, the 1963 car was not removed from the policy in suit until after the collision for the reason that the agent of plaintiff did not know about the sale of the car to Carolyn.

In 7 Insurance Law and Practice by Appleman, § 4292, p. 81, it is stated:

"Where a liability insurance policy has not been transferred by the insured to the automobile involved in the accident in controversy, the insurer is generally held not liable upon the policy. There must be some agreement between the parties permitting such substitution; and in the absence thereof, no coverage would obtain to the vehicle in question, so that it is unnecessary for the insurer to take active steps to declare the policy void. Generally, notice of the change of vehicles and of the desire for a change in the policy protection is, at least, essential to a valid change."

In Didlake v. Standard Ins. Co., (10 Cir. 1952) 195 F.2d 247, 33 A.L.R.2d 941, Jannson, 19 years of age, purchased the automobile, making a down payment of

$80.88. In order to finance the deferred payments, which he could not do himself because of his minority, he induced Lathrop, an adult 24 years of age, falsely to assume the role of owner. Lathrop obtained insurance on the representation that he was the sole owner of the automobile. Didlake suffered injuries in a collision caused by the negligence of Jannson, and judgment was obtained by Didlake against Jannson. Didlake brought the action against the insurance company to recover upon the contract of insurance on the theory that Jannson was covered under the omnibus clause. A summary judgment was entered in behalf of the insurance company, and Didlake appealed. On the first question raised, the court held that the policy was void because of misrepresentation of a material fact. However, the court did discuss the question that is before the court in the instant case, and at page 251 said:

"If we assume, without conceding, that the policy was not avoided by the false representation, then in our opinion the judgment below would have to be affirmed for another reason. Jannson owned the automobile and he had possession and control thereof. Lathrop did not own the automobile and he did not have either possession or control thereof. While the use of the automobile by Jannson at the time of the accident was with the assent of Lathrop, such use was not, in our opinion, with the permission or consent of Lathrop, as those terms are used in omnibus clauses in automobile insurance policies. The words 'permit' or 'consent' connote the power to grant or withhold. Since Lathrop was not the owner and was neither in possession nor control of the automobile, he could neither give nor withhold consent within the meaning of the omnibus clause."

The court has thoroughly considered all of the contentions made by the defendants, and is convinced that the plaintiff is not liable on the policy involved herein as a result of the accident between Billings and Perkins, and is not obligated to defend the action pending in the Circuit Court of Washington County, Arkansas, wherein Billings is plaintiff and Perkins is defendant.

Judgment in accordance with the above is being entered today.